CHARLOTTE E. ADAMS & others *vs.* ELIZA A. MORGAN & others.

Franklin.    September 17, 1889. — November 26, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Extrinsic Evidence to explain Written Agreement — Contract of Sale — Evidence — Declarations.*

An agreement in writing recited that it was "understood" between two that one of them was "to have a warranty deed of the Mansion-House property, and for that reason a certain promissory note" made by the other, who owned the property, and held by the first, "is to be cancelled when the deed is delivered or put on record; otherwise, the note to remain in full force." On a bill in equity for the specific performance of the agreement, oral evidence was offered of facts and circumstances which tended to show that the "warranty deed" referred to was a deed of the property already made, subject to mortgages thereon which the grantee was to assume and pay, by its owner, the maker of the note for the benefit of the holder, and deposited by such owner in the hands of a third person, and that it was upon the delivery of this deed by the third person to the holder that the note was to be cancelled. *Held*, that the evidence was properly admitted.

Declarations of the holder of the note, that the maker said to him, at different times before and after the agreement was executed, that he purposed to give such holder a clear title to the property, were *held* to be rightly excluded.

BILL IN EQUITY for the specific performance of the following agreement:

"Greenfield, Mass., May 19, 1882. It is this day understood between Peleg Adams and Charlotte E. Adams that Charlotte E. Adams, Ruth C. Adams, and Elizabeth L. Adams are to have a warranty deed of the Mansion-House property, and for that reason a certain promissory note, dated Greenfield, April 23, 1877, signed by Peleg Adams and payable to John A. Adams, or order, for nineteen hundred and thirty-one dollars is to be cancelled when the deed is delivered or put on record; other-

wise, the note to remain in full force. Peleg Adams. Charlotte E. Adams, Admx. of the estate of John A. Adams."

The case was heard by *Knowlton*, J., who reserved it for the consideration of the full court, in substance as follows.

The first named plaintiff is the widow, and the other plaintiffs, Ruth C. and Elizabeth L. Adams, are the only children of John A. Adams, deceased, a son of Peleg Adams. The first named defendant is the wife of Jeremiah P. Morgan and the daughter of Peleg Adams, and the other defendants are the latter's widow, and Rufus A. Packard, the executor of his will.

Evidence was offered tending to prove the following facts. Peleg Adams was the owner of real estate in Greenfield, called the Mansion-House property, which was worth about eighty thousand dollars. On January 15, 1877, he gave a mortgage on this property to secure his note for $35,000, and on January 7, 1879, a second mortgage upon the same to secure his note for $15,000, both of the mortgages being still outstanding and the notes unpaid. On January 10, 1879, he executed a deed of the property to John A. and Charlotte E. Adams, purporting to be in consideration of love and affection, and of one dollar, and containing a release of dower and the ordinary covenants of a warranty deed, except that it set out the above incumbrances and stated that the grantees were to assume and pay the mortgages, and gave it to Packard, with directions to hold it, and to permit him to take it away at any time; but if it should be in Packard's hands at Peleg's death, to deliver it to John A. Charlotte E. knew at the time that Peleg had made this deed and put it in some one's hands for the benefit of her husband and herself, but she did not know its terms or the particulars of the arrangement. On December 8, 1880, John A. died, after which Peleg took the deed from Packard. Subsequently, on December 23, 1880, Peleg executed another deed, substantially like the first, except that the plaintiffs, the widow and children of John A., were named in it as grantees, and took it to Packard for custody, and told him, if it should be in his hands at Peleg's death, to deliver it to the plaintiffs.

Charlotte E., who as the administratrix of her husband's estate held a note against Peleg for nineteen hundred and thirty-one dollars, on May 19, 1882, met Peleg at Packard's

office, and signed the agreement in question. She then under-
stood that Peleg had made and deposited with Packard the
second deed, which was then in his possession, but she did not
know its provisions. The agreement in question, when signed,
together with the note, was "given to Packard, under an agree-
ment that he should put them with the deed, and keep them
all together, and that if she wanted the note at any time she
might have it, and if Peleg Adams wanted the deed at any time
he might have it. Peleg Adams offered to show her the deed,
but she said she did not care to see it." Peleg told her at the
time to keep the note alive and not let it be outlawed. Some
time afterward she told him that the note was about to be out-
lawed, and he paid two dollars on the note, which was indorsed
upon it. Packard kept the note, deed, and the agreement in
question until after the death of Peleg, on September 8, 1887,
and then tendered the deed to Charlotte E.; but she declined
to accept it. She demanded of him, as executor of the will
of Peleg Adams, a warranty deed of the property, with cove-
nants against incumbrances; but he declined to give it. The
first account of Packard as executor disclosed a balance in his
hands of $66,755.76.

The judge admitted, against the plaintiffs' objection, the evi-
dence in regard to the making and deposit of each of the two
deeds, to Charlotte E's. knowledge of these deeds, to the pay-
ment subsequently made on the note, and to the value of the
property; if the facts reported in relation to either of these
matters were incompetent, they were to be disregarded.

The plaintiffs offered to prove by Charlotte E., that on May
19, 1882, prior to making the agreement in question, Peleg said
to her that he intended that they should have a good warranty
deed, as good a warranty deed as could be made, and that they
should have a clear title to the property; that he intended that
she and her children should have the bulk of his property; that
what Eliza A. Morgan was to have was in trust, and that what-
ever she got he supposed Jerry (her husband) would get it;
that there would be but little left of his estate, and that little
Jerry might quiddle over; and that subsequently, on several
occasions, he told her they were to have the Mansion-House
property clear; but the judge excluded the evidence.

*F. P. Goulding & F. G. Fessenden*, for the plaintiffs.

*W. S. B. Hopkins*, for the defendants.

KNOWLTON, J.    The plaintiffs insist that the writing which the bill was brought to enforce is on its face a contract for the sale of real estate by a warranty deed, in consideration of the cancellation of a promissory note for nineteen hundred and thirty-one dollars, and that no evidence can be introduced to show that it is anything else.    But it is familiar law, that, in interpreting contracts, it is always proper to put ourselves in the situation of the parties so far as to understand the subject matter to which the contract relates.    Oftentimes this involves knowledge of the circumstances under which the contract was made, and of facts not referred to in it, which may be supposed to have been in the minds of the parties when they made it, and which throw light upon its meaning.

It appears in the present case that Peleg Adams owned the Mansion-House property, worth about eighty thousand dollars, on which were mortgages amounting to fifty thousand dollars, and that before the death of his son, John A. Adams, he made and deposited in the hands of the defendant Packard a warranty deed of it, subject to two mortgages which the grantee was to assume, to be delivered after the grantor's death, unless it should previously be withdrawn from Packard's possession.    After John A. Adams's death, Peleg Adams obtained this deed from Packard, and made and deposited with him another like it, except that it ran to the plaintiffs, the widow and children of John A. Adams, to whom the deed was to be delivered after the grantor's death, unless it should be recalled and taken out of Packard's hands before that time.    The plaintiff Charlotte E. Adams knew that a deed of that kind was in Packard's possession, but she did not know its provisions.    She held, as administratrix of her husband's estate, a note for nineteen hundred and thirty-one dollars against Peleg Adams, which it was her official duty to collect for the benefit of herself and her children.    On May 19, 1882, the writing set out in the plaintiff's bill was signed by the parties, and that and the note were " given to Packard under an agreement that he should put them with the ·deed and keep them all together, and that, if she wanted the note at any time, she might have it, and if

Peleg Adams wanted the deed at any time, he might have it. Peleg Adams offered to show her the deed, but she said she did not care to see it." It was distinctly arranged that she should keep the note alive, and not let it be outlawed; and for that purpose, about five years afterwards, she collected a payment upon it. In the light of these facts, so far as they are competent to be considered, we are to interpret the writing set out in the bill.

It seems to have been the purpose of the parties, in executing the writing, to make an agreement in regard to the note, in view of their understanding and expectation as to the deed of the real estate. Both knew that Packard held a deed from Peleg Adams running to the plaintiffs as grantees. Both knew that that deed might or might not become operative; for Peleg Adams had delivered it subject to a right to withdraw it at any time during his life, and it was stated when they were all together, that if he wanted the deed at any time he might have it, as Charlotte E. Adams might have her note at any time if she wanted it. We understand this statement to have meant that either party was at liberty at any time to withdraw the paper that he or she had deposited, and that thereupon the arrangement would be terminated. But in view of her expectation that the deed would at some time come into her possession, she seems to have been willing to forego collection of the note, — apparently in accordance with his wish, — and to leave it in Packard's hands, to be kept alive there until it should be known whether she was to have the deed. So they made a voluntary arrangement — which was not binding for the future, but was subject to be terminated by either of them — that the note should remain in Packard's hands, and the deed should also remain there until one or the other should see fit to terminate the arrangement, she by withdrawing her note, or he by withdrawing the deed, or until the arrangement should be terminated in accordance with the expectation of both parties by a delivery to her of the deed. In view of this understanding, which did not affect the rights of either party, but left Peleg Adams's rights and Packard's duties in relation to the deed precisely as they were before, they made an agreement in writing to fix their rights in relation to the note so long as the arrangement should continue. Without reciting the details, they stated what they "understood" or

expected would occur under the arrangement, and named that as an inducement to a contract in regard to the note; and they then stipulated that the note should remain in full force and effect unless the deed should be delivered or put on record, and that in that event it should be cancelled.

What they said when they put the writing in Packard's hands was equivalent to a declaration that they delivered it, not as a contract of sale of real estate, but as a memorandum of their agreement in regard to the note so long as the note should be held under the arrangement.

We find nothing in these facts which contradicts or varies the terms of the writing. When the facts appear, the writing is found to be properly applicable to them. There can be no doubt, when we look at the circumstances surrounding the transaction, that the deed referred to in the paper was that which Packard then held, and that the agreement should be construed as if the words " now in the hands of Rufus A. Packard" had been inserted in it after the words " warranty deed of the Mansion-House property." It is argued that the deed which Packard held was not a warranty deed, and so that the writing cannot be shown to have referred to that. We think so much else appears to show what deed was intended, that, even if the word " warranty " gave an absolutely false description in this part of the instrument, which is a mere recital, it could be rejected. *Clark* v. *Houghton*, 12 Gray, 38. *Johns* v. *Church*, 12 Pick. 557. But while it is inaccurate, it is not utterly false and misleading. The deed was in form a warranty deed, containing all the covenants and provisions usually found in such an instrument, although its legal effect was changed by an exception of the two mortgages in one of the covenants, with a statement that the grantees were to assume and pay them. Such a deed is often spoken of as a warranty deed made subject to mortgages to be assumed. Upon the question whether the oral testimony was competent, the case is not as if the evidence had made the agreement contradictory, and wholly inapplicable to the facts as shown.

It is always competent to show by parol whether an instrument was delivered or not, and if its terms are equally consistent with both, it is competent to show either an absolute

or a qualified delivery.  So, if its language is capable of one kind of interpretation as applied to one state of facts, and equally capable of a different interpretation as applied to other facts, it is always competent to show what were the facts in reference to which it was made.  We think the facts introduced in evidence in this case were competent, and we are clearly of opinion that the plaintiffs are not entitled to a deed of the Mansion-House property free from the mortgage incumbrances upon it.

The offer to prove by Charlotte E. Adams what Peleg Adams said to her at different times, before and after making the written agreement, in regard to his purpose to give her a clear title to the property, was rightly rejected.  It was merely an attempt to affect a written instrument by introducing prior and subsequent declarations of the maker as to the kind of instrument he intended to make.          *Bill dismissed with costs.*