SARAH F. STRONG, executrix, *vs.* CARVER COTTON GIN
COMPANY.

Suffolk.    November 19, 1907. — December 31, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Evidence*, Extrinsic affecting writings, Admissions and confessions.    *Contract*, Construction, Validity, Implied from conduct.    *Patent*.

In an action to recover royalties under a contract in writing granting the defendant a license to manufacture and sell "automatic feed attachments" under a certain patent, which by the plain meaning of its words covers only the manufacture and sale of attachments for which the patent was granted, it cannot be shown by oral evidence that the contract was intended to include automatic feed attachments which were not within the terms of the patent and were not protected by it.

In an action on an agreement to pay royalties to a patentee upon the manufacture and sale of certain machines under his patent, if it appears that the question whether a certain machine manufactured and sold by the defendant was covered by the patent was doubtful and was being litigated, an agreement of the parties either express or shown by their conduct, that the machine was covered by the patent, is competent evidence of that fact.

An agreement to pay a patentee a royalty for a license to manufacture and sell a particular machine, it being uncertain whether it is covered by the patent or not, is binding and will be enforced, although it turns out that the patent is invalid or that the machine is not covered by it, because the agreement is to pay for exemption from disturbance by the patentee and immunity from any claim under his patent.

If a manufacturer has agreed to pay a royalty to a patentee on all machines manufactured and sold by him which are covered by the patent, and subsequently treats a certain machine which he is manufacturing as covered by the patent by making regular returns of his sales of the machines and paying royalties upon them at intervals of six months for four years, also advertising the machines extensively under the patent, and marking them patented, this is equivalent to an agreement that while this practice exists between the parties the machines shall be treated as covered by the patent, but it does not bind the manufacturer to continue the arrangement after he finds out that the patent is not valid or that the machines he is manufacturing are not covered by it.

CONTRACT for damages for the alleged breach of an agreement in writing to pay royalties to the plaintiff dated February 1, 1897.  Writ dated September 28, 1904.

The contract sued upon was as follows:

"Memorandum of agreement made and entered into this First day of February, A. D. 1897, by and between Frederick C. Mann,

and Sarah F. Strong, as Executrix of the will of Frederick S. Strong, both of East Bridgewater in the County of Plymouth and Commonwealth of Massachusetts, parties of the first part, and the Carver Cotton Gin Company, a corporation duly established under the laws of the Commonwealth of Massachusetts, and having a usual place of business in East Bridgewater, party of the second part,

" Witnesseth

that Whereas the said parties of the first part are joint owners of Letters Patent of the United States of America, Numbered 503,997, issued Aug. 29, 1893, for the term of seventeen years, said Letters Patent being granted for ' Automatic Feed Attachments,' and

. Whereas, the said party of the second part desires a license to manufacture, use and vend and sell to others to use and vend for use in connection with Cotton Seed Linters of its own make, said Automatic Feed Attachments under said Letters Patent, and Whereas, the said parties of the first part are willing to grant such license upon the terms and conditions following,

" Now therefore,

the said party of the second part does hereby for itself and its successors agree with the said Frederick C. Mann, and his executors, administrators and assigns, and with the said Sarah F. Strong and her successors in said trust that, in consideration of the granting of the license as hereinafter set forth, it will pay to said parties of the first part, their representatives, successors or assigns, for each ' Automatic Feed Attachment ' made and sold with, and to be used with, a Cotton Seed Linter of its manufacture, the sum of Twelve Dollars, and for each ' Automatic Feed Attachment ' made and sold without a Cotton Seed Linter, to be however used in connection with a Cotton Seed Linter of its manufacture, the sum of Ten Dollars, and the said party of the second part does hereby further agree that it will not make or sell any of the ' Automatic Feed Attachments ' to be used with any other make of Cotton Seed Linters than its own, or for any other use.

" And the said parties of the first part in consideration of the foregoing do hereby grant to the said party of the second part the exclusive license to make, use and sell, and to vend to others

to be sold or used with Cotton Seed Linters of the manufacture of said party of the second part said 'Automatic Feed Attachments' for the entire unexpired term for which said Letters Patent were issued.

"And it is hereby mutually agreed and understood that the royalties herein agreed to be paid by said party of the second part to the parties of the first part shall not be due and payable until said party of the second part has received its payment therefor.

"And it is hereby further mutually agreed and understood that payment is to be made by the party of the second part in manner following when payment is due, that is to say : for each 'Automatic Feed Attachment' sold with a Cotton Seed Linter the sum of six dollars to said Frederick C. Mann or his representatives or assigns and to said Sarah F. Strong during her lifetime the sum of six dollars, and in case of her decease during the term of this contract without having assigned the same, to the issue of her son or his representatives ; and for each 'Automatic Feed Attachment' sold without a Cotton Seed Linter the sum of Five Dollars to said Frederick C. Mann or his representatives or assigns and to said Sarah F. Strong during her lifetime the sum of Five Dollars, and in case of her decease during the term of this contract without having assigned the same to the issue of her son or his representatives.

"And it is hereby further agreed between said Sarah F. Strong and said party of the second part that in case of her decease during the term of this contract without having assigned the same with royalties accrued but not payable at the time of her decease that when the same become payable under the terms of this contract that said party of the second part will pay the same to her legal representatives.

"And it is hereby further mutually agreed and understood that in case of any violation of the terms of this contract or the conditions of said license by said party of the second part, the said parties of the first part, their representatives or assigns, shall have the right to revoke said license and to grant to others the right to make, use and vend said 'Automatic Feed Attachments' under said Letters Patent for the same purposes for which this license is given after thirty days' notice given in writing.

" And it is hereby further understood and agreed that said parties of the first part reserve to themselves, their representatives and assigns all rights to make, use and vend to others said ' Automatic Feed Attachment ' for other uses than upon Cotton Seed Linters if it shall prove to have value for use in connection with any other sort or kind of machine.

" In witness whereof the parties hereto have hereunto interchangeably set their hands and seals to this and two other copies hereof this day and year first above written.

" Frederick C. Mann,
Sarah F. Strong, Executrix,
Carver Cotton Gin Co.,
By Aaron Hobart,
Treasurer."

The defendant's answer was a general denial.    The following stipulations were filed by the parties :

" If it shall be found that the mechanisms which have been manufactured and sold by the defendant are within the terms of · the contract sued upon, and that the defendant is liable therefor in this action, the plaintiff shall recover a verdict of $17,840.91, the payment of which sum shall be full payment of all sums, inclusive of interest, due from the defendant to the plaintiff under the contract herein sued upon, up to July 1, 1906.

" 1.    The defendant is a corporation organized under the laws of the Commonwealth of Massachusetts and having a regular place of business and operating a factory at East Bridgewater, Massachusetts.

" 2.    The contract between Frederick C. Mann, Sarah F. Strong, Executrix, and the Carver Cotton Gin Company, dated February first, 1897, is the contract of the parties and was executed by the Carver Cotton Gin Company on said date as alleged in the plaintiff's declaration, by its Treasurer, Aaron Hobart, whose authority is admitted for the purpose of this suit.

" 3.    That the plaintiff Sarah F. Strong and one Frederick C. Mann were at the time of said contract and ever since have been the owners of letters patent No. 503,997, issued August 29, 1893, as set forth in said contract and in the declaration.

" 4.    That the defendant has paid the plaintiff no royalties

under said contract dated February 1, 1897, since July first, 1900.

" 5. That either party may offer in evidence and use at the trial of this cause printed Patent Office copies of any letters patent with the same force and effect as the original of such letters patent, and that no objection will be made to such form of proof. It is understood, however, that no objections are waived to the materiality of such letters patent or to other matters which might be urged against original or certified copies of said letters patent."

In the Superior Court the case was tried before *Bond*, J.

At the close of the plaintiff's opening, in which the plaintiff stated the substance of the evidence later introduced by the plaintiff and nothing material in addition thereto, the defendant asked the judge to make the two following rulings :

1. That upon the plaintiff's opening no evidence can be presented upon which the plaintiff is entitled to go to the jury, and a verdict should be ordered for the defendant.

2. That in the absence of the patent specified in the contract sued on the pleadings are incomplete and no case is made out upon which the plaintiff is entitled to go to the jury or to proceed; and the court is requested to direct the jury to return a verdict for the defendant.

The judge refused to make either of these rulings and the defendant excepted.

At the close of the evidence and after offers by the defendant of evidence which was excluded by the court, the defendant made twenty requests for rulings, including requests for rulings that upon all the evidence and upon any construction of the contract the plaintiff was not entitled to recover.

The judge refused to make any of the rulings requested, and gave other instructions to the jury, to portions of which the defendant excepted.

The jury returned a verdict for the plaintiff in the sum of $17,840.91, the amount named in the stipulations; and the defendant alleged exceptions.

*J. W. Farley* (*A. Hemenway & W. Quimby* with him,) for the defendant.

*R. Cushman* (*J. P. Russell* with him,) for the plaintiff.

KNOWLTON, C. J.    This is an action to recover royalties un-
der a contract in writing, granting the defendant a license to
manufacture and sell the machines covered by a certain patent.
The principal question in the case, which arose at the trial in a
variety of forms, is, What is the proper construction to be put
upon this contract?   It recites that the parties of the first part
are joint owners of Letters Patent " numbered 503,997, issued
August 29, 1893 for the term of seventeen years, said Letters
Patent being granted for ' Automatic Feed Attachments ' " and
that the party of the second part, which is this defendant, de-
sires " a license to manufacture, use and vend . . . said Auto-
matic Feed Attachments under said Letters Patent."   The party
of the second part agrees to pay for each " automatic feed at-
tachment " made and sold, and to be used with a cotton seed
linter of its own manufacture, $12, and for each " automatic feed
attachment " made and sold without a cotton seed linter, but to
be used with a cotton seed linter of its manufacture, $10.   The
parties of the first part grant to the party of the second part
" the exclusive license to make, use and sell, and to vend to
others to be sold or used with Cotton Seed Linters of the manu-
facture of said party of the second part, said ' Automatic Feed At-
tachments,' for the entire unexpired term for which said Letters
Patent were issued."   This contract was made on February 1,
1897.   It contains numerous other provisions referring to these
" automatic feed attachments," which name is always in quo-
tation marks and often immediately preceded by the word
" said."   It purports to license the manufacture and sale of the
attachments for which the patent was granted, that is to say,
those covered by the patent, and no others.   The first question
is whether, treating this as an executory contract, and deter-
mining its meaning immediately after its execution, it pur-
ported to cover, or can be shown by oral evidence to cover,
" automatic feed attachments " which were not within the terms
of the patent and not protected by it.   From the beginning to
the end of it the only terms used to designate the attachments
licensed, for the manufacture of which the defendant would be
obliged to pay, were the words referring to the patent.   To
show by oral evidence that other attachments were included
would be to contradict its plain meaning, and to vary and en-

large it.   Oral testimony is never competent to change a written contract in this way.   It is a familiar principle that, where a written contract is ambiguous and of doubtful meaning, proof of the conditions and circumstances under which it was made, and of the facts to which it relates, may be introduced to apply it properly to the subject matter, and to ascertain the true meaning of its language as it was used by the parties.   *Knight* v. *New England Worsted Co.* 2 Cush. 271, 283.   *Stoops* v. *Smith,* 100 Mass. 63.   *Swett* v. *Shumway,* 102 Mass. 365.   *Keller* v. *Webb,* 125 Mass. 88.   *Adams* v. *Morgan,* 150 Mass. 143.   *Bassett* v. *Rogers,* 162 Mass. 47.   *Moran* v. *Prather,* 23 Wall. 492. *Reed* v. *Insurance Co.* 95 U. S. 23.   But this rule applies only where the meaning of the writing would otherwise be doubtful. It cannot be applied to contradict the plain meaning of the words, or to engraft upon the writing a provision entirely outside of it.   *Glynn* v. *Moran,* 174 Mass. 233, 237.   *Menage* v. *Rosenthal,* 175 Mass. 358, 361.   *Callender, McAuslan & Troup Co.* v. *Flint,* 187 Mass. 104, 107.   In this particular the present contract is free from ambiguity.

Much oral testimony was introduced in behalf of the plaintiff to aid in the interpretation of the contract, and there were numerous offers of proof by the defendant which were rejected. From these it appeared, or it fairly may be inferred, that the patentees Strong and Mann had been employed by the defendant for a long time in its mechanical department, Strong being its superintendent and having entire supervision of the mechanical work in the factory until his death in 1894.   Mann was formerly a travelling salesman, who also worked in the factory more or less in Strong's lifetime and had a leading position there after his death.   This patent was for a feeder, to be used as an attachment to a cotton seed linter, which is a machine to separate the lint from cotton seed after the process of ginning.   In the linters previously used there had been difficulty in regulating the supply of seed entering the machine so as to obtain the best results.   Sometimes it would go too fast, and sometimes too slowly.   The patent was for an auxiliary feed roll, to be used with a float, to supplement the action of the roll formerly in use, both rolls being used in the machine and running independently, the auxiliary roll regulating the additional supply of seed

according to the quantity that the machine would dispose of. Before Strong's death in 1894, there was, in the factory, a cotton seed linter to which an auxiliary automatic feed roll had been adapted, substantially as described in the patent. It does not appear that the defendant, or any one else, ever sold any machines of this construction. It appeared that, beginning in the spring or summer of 1896, the defendant manufactured and sold cotton seed linters with an automatic feed attachment, and also automatic feed attachments to be used with cotton seed linters which it had sold previously, which linters and attachments have a single feed roll, working automatically on the principle applied to the auxiliary feed roll in the patent, a model of which linters, called Exhibit Number 2, was used at the trial. We infer, although this was not proved, that the automatic feed roll, taken by itself, was not novel and not patentable. The patent was in evidence, and it covers the combination of this auxiliary automatic feed roll with the other roll running independently. We also infer, although this too was not proved, that the automatic feed attachments made by the defendant were not infringements upon the patent, and were not patentable. Perhaps, as machines for sale and for practical use, they are as good as the patented machine, if not better. The defendant paid Strong and Mann $500 as royalties for the manufacture of these machines during the year 1896, and before the execution of the contract. Upon this evidence, and upon proof of other conduct of the parties subsequently, it was held by the judge that the written contract was for a license to manufacture and sell machines like model Number 2, and that the defendant was bound to pay the royalty upon all machines of that kind that it should manufacture at any time during the term of the patent. We are of opinion that this was erroneous.

It seems probable upon the evidence that the managers of the defendant corporation, when this contract was executed, supposed that model Number 2 was covered by the patent, and that no one could manufacture it without a license from the patentees. Whether Mann the surviving patentee and joint contractor with the plaintiff supposed so does not appear. The offer of proof of what was discovered in the proceedings for ob-

taining the patent, and of the amendments that were made after
the application was filed, indicate the possibility of his belief
that the machine model Number 2 was not an infringement
upon the patent.   However that may be, we are of opinion that
this contract, when it was executed, related only to manufacture
and sale under the patent, and did not take away from the de-
fendant the right that everybody had to make and sell any
machine not covered by the patent.   We are of opinion that
the defendant's managers might have said to the parties of the
first part the next day after signing the contract, " We have in-
vestigated and found that your patent does not cover any machine
that we wish to manufacture.   We shall, therefore, decline to
make or sell any machines under your patent, or to use the
license in any way.   We shall make such machines as we have
been making, independently of any license."   Otherwise, upon
a contract which in terms bound them to pay royalties only for
machines manufactured under a patent, they precluded them-
selves during the whole term of the patent from manufacturing,
except under a license, that which everybody else could manu-
facture freely.   A *construction* which would have this effect
ought not to be given to the contract, unless it is plainly re-
quired.   That the machines to be manufactured were to be
within the patent was of the very essence of the agreement
stated in the writing.

So far we have dealt with the contract when it was entirely
executory.   When the time came for action under it and the manu-
facture of a particular machine was proposed, new questions
would arise.   It well might be a matter of doubt, especially
with the imperfect knowledge of the facts that the parties had,
whether such a machine was covered by the patent.   If then,
the parties agreed expressly or impliedly, or assumed by their
conduct, that a certain machine was covered by the patent, that
would be competent evidence of the fact if the matter was
doubtful and was litigated.   Still further, it is competent for
one to agree to pay a patentee a royalty for a license to manu-
facture a particular machine when he is uncertain whether it is
covered by a patent or not.   His payment in such a case, is for
exemption from disturbance and the possibility of disturbance
by the patentee.   *Buss* v. *Putney,* 38 N. H. 44.   *Heaton-Penin-*

*sular Co.* v. *Eureka Specialty Co.* 77 Fed. Rep. 290. If he makes an agreement of that kind, it is no defence to an action for royalties that the patent is invalid, or that his machine is not covered by it. *White* v. *Lee,* 14 Fed. Rep. 789. *Marston* v. *Swett,* 82 N. Y. 526. *McKay* v. *Smith,* 39 Fed. Rep. 556. *National Rubber Co.* v. *Boston Rubber Shoe Co.* 41 Fed. Rep. 48. *Pope Manuf. Co.* v. *Owsley,* 27 Fed. Rep. 100, 108. See also *Eureka Co.* v. *Bailey Co.* 11 Wall. 488. He has and enjoys that which he pays for, namely, immunity from any claim under the patent. The patentee gives up that which might be valuable, namely, the right to prosecute for an infringement. So, under a contract like that between these parties, if the manufacturer says, I will manufacture this machine and treat it as covered by the patent, and the other party assents, he is bound by his agreement so long as he acts under it. It has been said in some cases that he is estopped from denying that what he manufactures under such an agreement is covered by the license. *Andrews* v. *Landers,* 72 Fed. Rep. 666. *Sproull* v. *Pratt & Whitney Co.* 97 Fed. Rep. 807. The same principle has also been applied to hold the defendants liable as licensees in the following cases: *Covell* v. *Bostwick,* 39 Fed. Rep. 421; *Pope Manuf. Co.* v. *Owsley,* 27 Fed. Rep. 100, 108; *Milligan* v. *Lalance & Grosjean Manuf. Co.* 21 Fed. Rep. 570; *Kirkpatrick* v. *Pope Manuf. Co.* 64 Fed. Rep. 369. See also *Eureka Co.* v. *Bailey Co.* 11 Wall. 488; *Jones* v. *Van Kirk,* 2 Fisher's Pat. Cas. 586.

The defendant treated the machines that it manufactured as made under the patent, and, at intervals of six months for four years, made regular returns of the sales of them and paid royalties. It also advertised them extensively as made under this patent, and marked them as patented. This was equivalent to an agreement that machines manufactured while this practice and understanding existed between the parties should be treated as covered by the contract for a license. So long as this understanding existed, the defendant would be warranted in relying upon freedom from any claim by the patentees for an infringement of the patent, and the patentees would be warranted in refraining from attempting to enforce their patent by other proceedings, and in expecting payment of the royalties. In its application to these machines as they were being manufactured

from time to time, this action by mutual consent was like a new contract for a valuable consideration, not extending into the future, but in force only so long as the action continued, and terminable at any time. Very likely the arrangement was entered into under a misapprehension of the facts. It did not purport to bind the parties for the future. But the mere fact, which the defendant offered to show, that a competitor was manufacturing such machines in defiance of the patent, and that the patentee declined to bring a suit upon his patent, even when the defendant offered to pay the expenses of the suit, would not relieve the defendant from liability if it continued to manufacture and sell under the license. If for such a reason, or for any other, it terminated the arrangement and ceased to act or claim under the patent, and asserted and exercised its right to manufacture and sell afterward adversely to the patent, it could not be held under the contract for that which it afterwards did independently of it. This is, of course, upon the assumption that their machines were not covered by the patent. It follows that a part of the evidence offered by the defendant was erroneously excluded.

Upon the undisputed facts it seems that the defendant is liable for a part of the plaintiff's claim, not because the amount was covered by the original contract, but because the parties have impliedly agreed that it should be treated as so covered. The stipulation fixed the amount of the verdict to be rendered, if it should be " found that the mechanisms which have been manufactured and sold by the defendant are within the terms of the contract sued upon, and that the defendant is liable therefor in this action," etc. We understand that the excluded evidence offered by the defendant might have shown that these mechanisms were not within the terms of the contract, and that the defendant's only liability is to the extent of its manufacture under an implied agreement that they were covered by the patent, and were to be paid for under the license. The exceptions must therefore be sustained, and at the new trial it will be a question whether the machines are covered by the patent, and if not, to what extent the defendant has manufactured them as and for machines covered by the patent, for which the plaintiff had a right to expect a payment of royalties

under the contract. We do not think it necessary to consider the exceptions more particularly. We have discussed the case without reference to any question of pleading that may arise hereafter.

*Exceptions sustained.*