4-ONE BOX MACHINE MAKERS

*vs.*

WIREBOUNDS PATENTS COMPANY.

Cumberland.     Opinion, August 16, 1933.

*Verrill, Hale, Booth & Ives,*
*Douglas, Armitage & McCann.*
*Blair, Curtis & Dunne,* for plaintiff.
*Woodman, Skelton, Thompson & Chapman,* for respondent.

SITTING: PATTANGALL, C.J., DUNN, STURGIS, BARNES, THAXTER, JJ.

THAXTER, J.  This is the second time that this case has been reported to this Court for decision on the defendant's demurrer to the plaintiff's bill in equity. In the former opinion, 131 Me., 356, 163 A., 167, it was held in construing a license agreement that the invalidity of certain basic patents did not give to the plaintiff, the licensee, a cause of action against the defendant, the licensor, based on a failure of consideration. By the mandate of this Court the original demurrer was sustained and the case remanded to the sitting Justice. Amendments to the bill were filed by the plaintiff and to the amended bill the defendant has again demurred. As in the first instance the case is before us on report.

From the license agreement of May 16, 1916, set forth in the original bill the plaintiff derives its rights. Under the terms of this the defendant licenses the plaintiff "to make and use machines, and to make, use and sell boxes, and to use methods, and to license sublicensees so to do" under certain patents. Then follows a covenant by the licensor that it will not grant a license to anyone else. In the previous opinion we held that this agreement, by reason of the restrictive covenant against licensing others, gave to the plaintiff an exclusive license, but that it did not purport to grant an exclusive right or monopoly on the failure of which a right of action would accrue. That such was the proper construction was also indicated by certain other clauses of the instrument such as the plaintiff's covenant acknowledging the patents throughout their respective terms as valid for all purposes, and a covenant by which the plaintiff agreed to prosecute infringers at its own expense and to pay any judgment which might be rendered against either the plaintiff or the defendant in any suit. Supporting such interpretation was likewise the fact that the parties were dealing with a large number of patents as an entirety, that the agreed royalties were to be paid after the rights in the basic patents should expire, and that the plaintiff did not formally preclude itself from using the patents itself. In other words, the instrument taken as a whole showed an intent to place the risk of operating under the patents on the plaintiff and not on the defendant.

The plaintiff has now filed certain amendments which it claims compel the Court to place a different construction on the license agreement. The first of these is the incorporation in the bill of the

so-called Healy license of April 11, 1911. William P. Healy, the then owner of certain patents, by license granted to the plaintiff the exclusive right to operate under said patents and any others thereafter acquired by the licensor. This grant included "the exclusive right to manufacture and use the machines" covered by the patents; "the exclusive right to operate under any and all licenses, now or hereafter acquired by the licensor for the manufacture and use of machines for the manufacture of boxes"; "the exclusive right to grant to its sub-licensees the exclusive or non-exclusive right to use such machines"; "the exclusive right for the licensee and sub-licensees to manufacture, use and sell boxes made by such machines." This license agreement became effective October 4, 1913. In 1914 the defendant company was formed and acquired the interest of Healy in this license and thus became entitled to receive the royalties therein reserved. The amended bill then goes on to allege that the license agreement of May 16, 1916, did not terminate the exclusive rights granted under the 1911 license but was merely an amendment or modification of the previous agreement.

It further states that since the making of the agreement of May 16, 1916, the defendant has by its acts and conduct recognized and confirmed the exclusive rights granted in the previous license. The acts specifically referred to are the granting of four sub-licenses in the form of Exhibit C, which provide that the sub-licensees shall pay royalties to the plaintiff so long as the plaintiff shall remain the exclusive licensee of the defendant and thereafter such payments shall be made to the defendant. There is then the statement that such royalties have always been paid to the plaintiff as such exclusive licensee. The second act, which it is claimed acknowledges the Healy license as still in force, is the granting of sub-licenses in accordance with forms A, B and C which contain representations that the plaintiff has been granted "exclusively the right" to operate under the patents and wherein the plaintiff is referred to as having the only valid exclusive license. The third circumstance, which it is claimed shows an intent to recognize the Healy license as in effect after the granting of the other, is that in litigation in 1925 in the United States District Court in Michigan the plaintiff is described by its president, who was also president

of the defendant, as an exclusive licensee; and it is pointed out that in the decision of that case the District Court found such to be the fact.

The plaintiff now claims that the 1911 license was continued in force by the subsequent agreement of 1916, and that as the Healy license was a grant of an exclusive right so was the agreement of 1916.

In attempting to construe the two agreements together, section 18 of the later license furnishes the rule by which conflicting provisions of the two may be resolved. The pertinent part of it reads as follows: "It is the intention of the parties hereto that this license shall without interruption continue the rights and privileges (as herein modified) of the Licensor and Licensee under such license of April 11, 1911, and shall be amendatory thereof, but any provision of such license of April 11, 1911, not appearing in this license, or which is inconsistent with any of the terms of this license, shall be of no further force or effect."

As this Court pointed out in the previous opinion the license agreement of 1916 was drawn with great care. Except in so far as certain portions of the 1911 license may have been incorporated by the provisions of section 18, the later draft contains the full agreement of the parties. It is not ambiguous. Under such circumstances it is not permissible to go outside the four corners of the instrument to determine its meaning. *Ames* v. *Hilton,* 70 Me., 36; *Snow* v. *Pressey,* 85 Me., 408, 27 A., 272; *Strong* v. *Carver Cotton Gin Co.,* 197 Mass., 53, 59, 83 N. E., 328.

Nor do the provisions of section 18 help the plaintiff. If the terms of the 1911 license are consistent with those of the subsequent agreement, the interpretation placed by this Court on the 1916 license must obviously stand. If such provisions are inconsistent, they are abrogated by the express terms of section 18.

These observations might well determine the issue raised by the defendant's demurrer to the amended bill. Counsel have, however, spent much time in arguing that the parties have recognized the Healy license as in full effect, and by their conduct have estopped themselves from setting up any different interpretation of the agreement than that now contended for by the plaintiff.

In the previous opinion we took pains to point out that the 1916 agreement did not purport to grant an exclusive right or a monopoly to the plaintiff, on the failure of which a right of action would accrue. The defendant gave the plaintiff permission to operate under the patents and debarred itself from granting a similar right to anyone else. The practical effect of this language was to give to the plaintiff an exclusive license. We so indicated in our opinion which appears to be in entire accord with the case of *Western Electric Co.* v. *Pacent Reproducer Corporation,* 42 Fed. (2d) 116, cited by counsel for the plaintiff. The truth of the matter is that the issue in this case is not whether the plaintiff's license is exclusive or non-exclusive, but whether under a proper construction of the license agreement there was a failure of consideration. The character of the license may be of importance in determining this question, but as we indicated before it is not controlling. There is nothing in the opinion in *Drackett Chemical Co.* v. *Chamberlain Co.,* 63 Fed. (2d) 853 (C. C. A. 6th Cir.) inconsistent with this conclusion.

It is significant that the language of the granting clause in the Healy license was modified in the 1916 agreement. In our opinion this change was made advisedly and for one of two reasons, either it was thereby intended to limit the grant which had been previously given, or possibly recognizing that the purported grant in the Healy license of an exclusive right was inconsistent with the later covenants by the licensee admitting the validity of the patents and imposing on the licensee all of the hazards of operating under them, the modification was made for the purpose of making the phrasing of the granting clause consistent with such other sections. But whatever the reason the later agreement is clear and must be held to express the intent of the parties.

The inclusion of the Healy license in the amended bill, far from raising a doubt in our minds as to the correctness of the interpretation which in the previous opinion we placed on the 1916 agreement, rather confirms the views there expressed. That the parties in sub-license agreements and in litigation referred to the plaintiff as an exclusive licensee is not inconsistent with our construction of this instrument, which, however it may be designated by name,

does not purport to give to the plaintiff such a monopoly in the making, using, and selling of the supposed invention that a cause of action arises by reason of a judgment declaring the patents in question invalid.

*Demurrer sustained.*
*Case remanded to sit-*
*ting Justice.*