## BLACK v. RICHFIELD OIL CORPORATION.

### No. 230.

District Court, S. D. California, Central Division.

April 25, 1941.

990

Lyon & Lyon and Robert E. Paradise, all of Los Angeles, Cal., for defendant.

Oliver O. Clark and Philip Subkow, both of Los Angeles, for plaintiff.

HARRISON, District Judge.

The plaintiff in this action seeks relief under three separate counts. All three counts revolve around a certain licensing agreement for use of inventions entered into by the plaintiff with the Pan American Petroleum Company, under date of September 15, 1925. Under the first count, plaintiff seeks, through declaratory relief, to have the rights of the parties under said agreement determined. The second count is brought for the purpose of reforming said agreement so that it will include certain inventions of plaintiff not specifically described therein. The third count seeks an accounting. By stipulation the trial of the third count was continued until after a determination of the first two counts, consequently, this opinion is confined solely to the first two counts.

The main difficulty between the parties arises over the fact that the licensing agreement omitted to specifically mention patent application No. 599,403, filed November 6, 1922, which culminated in patent No. 2,075,164, issued March 30, 1937. This patent covers the use of chrome alloy tubing used in the cracking of oil and is described in the said patent as "Method and Apparatus for Converting Hydrocarbons". The nature of the patent is not necessarily material to this opinion but a detailed description of the same and its importance in the refining of oil is fully set forth in Gasoline Products Co., Inc. v. Coe, 66 App. D.C. 333, 87 F.2d 550.

From the evidence it appears that on January 1, 1920, the plaintiff commenced his employment as General Superintendent of Refineries for the Doheny interest, which at the time controlled the Pan American Petroleum and Transport Company and the Pan American Petroleum Company. At the time of his employment he had developed a high pressure process for the cracking of oil, commonly known in the industry as "Black's Process".

On October 30, 1924, plaintiff licensed in writing to the Pan American Petroleum and Transport Company certain patents described therein. In 1925 the Doheny interest disposed of the Pan American Petroleum and Transport Company but retained the Pan American Petroleum Company, and on August 25, 1925, Olin Wellborn, acting for the latter named company wrote to the plaintiff, who was then in New York, asking that a licensing agreement be executed between the plaintiff and the said Petroleum Company. The proposed agreement was enclosed in the letter and among other things Mr. Wellborn stated:

"As you know, I am not familiar with these various inventions and accordingly have used the patent numbers employed in the old contracts; stating that letters patent had been issued with respect to some, that applications for patent were pending with respect to others; that some deal with the process for the extraction of synthetic gasoline and that others have no connection with this process. I am leaving the matter of checking these numbers and also the references to them entirely up to you."

Thereupon plaintiff executed the said agreement and inserted therein two additional application numbers and returned the same to Mr. Wellborn. Thereafter, Mr. Wellborn redrafted the agreement and sent the same to the plaintiff for signature, which was duly executed by the plaintiff. As a result the evidence disclosed two agreements executed between the same parties, both bearing the date of September 15, 1925. The court is of the opinion that the later agreement is the real agreement between the parties and therefore finds that the agreement between

the parties is plaintiff's Exhibit 5, which in part provides:

"The Licensor is the owner of certain new and useful inventions for the extraction of gasoline from petroleum, also the reduction of viscosity of petroleum products, consisting of certain high pressure processes. The Licensor represents that by means of these processes and apparatus an amount of gasoline in addition to the natural gasoline content of the petroleum can be extracted by "cracking" of the oil. Three letters patent of the United States, numbered 1426813, 1431772 and 1456419 respectively, have been issued, and ten applications for letters patent, numbered 714070, 602439, 569757, 344406, 492337, 596836, 712156, 49843, 53334 and 596837 respectively, are now pending in the United States Patent Office, with respect to these inventions. These patents and applications are referred to for full particulars with respect to the nature and character of said processes and apparatus and are hereinafter for convenience referred to as the processes for the extraction of synthetic gasoline.

"The Licensor has also invented and perfected and is now engaged in perfecting a number of other inventions useful in the conduct of the business of the Licensee and which relate to matters other than the extraction of gasoline and the reduction of the viscosity of petroleum products. Applications for letters patent with respect to these inventions are now pending in the United States Patent Office and are numbered 569156, 712156, 596837, 595660, 690207, 690874, 587006, 622386, 630147, 690206 and 371399 respectively. These applications are referred to for full particulars as to the nature and character of said inventions.

"The Licensee is engaged in the business of producing, refining, buying, selling and generally handling petroleum and petroleum products, and in its operations it is now using certain of the inventions above referred to (including both the processes for the extraction of synthetic gasoline and also some inventions with respect to other matters,) and desires to continue such use and also desires to obtain the right to use and employ any or all of the above mentioned inventions, processes and apparatus in connection with the conduct of any of its business.

"Now, therefore, in view of the facts above recited, and in consideration of the covenants and agreements of the parties hereto hereinafter contained, the parties hereto covenant and agree as follows:

"(1) The Licensor for himself, his heirs and assigns, hereby grants to the Licensee, its assigns and successors in interest, the right, privilege and license to use and. employ in the conduct of the business of the Licensee any and all of the above mentioned inventions, processes and apparatus and any and all improvements thereto and inventions of a similar nature which may be hereafter made by the Licensor.

"(2) The Licensee agrees to pay to the Licensor, for the use of any and all of said above mentioned inventions, processes and· apparatus, a royalty to be computed upon the gasoline extracted by means of the processes for the extraction of synthetic gasoline and paid in the manner following, to wit:"

Then follow provisions for the computation and payment of royalties and other provisions not pertinent to this action.

Thereafter on or about June 21, 1928, the Richfield Oil Company of California acquired the controlling interest in the Pan American Petroleum Company. Later a receiver was appointed for the Richfield Oil Company of California and in due time, it, together with the Pan American Petroleum Company, were brought under the provisions of § 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207.

In due time defendant corporation was organized and submitted a plan to the court whereby it proposed to purchase the assets of the old Richfield Company and its subsidiaries and assume certain existing liabilities of the trustee, including such contracts that had been affirmed by the court. To this end, the new Richfield Company raised some $20,000,000.00 in cash and acquired by purchase the assets of the old company and entered into an agreement assuming certain liabilities, including the licensing agreement of September 15, 1925.

Defendant contends that the licensing agreement involved in this litigation was never affirmed by the court and was never specifically assumed under the reorganization agreement. The evidence clearly indicates that the trustee recognized the agreement and the conduct of the defendant corporation establishes that it too assumed the said licensing agreement had been affirmed by the court and that they were bound by the terms of the same. For

the purposes of this opinion, I have acted on the assumption that the new corporation specifically assumed the said agreement and is bound by the terms thereof, to the same force and effect as if the said agreement had been specifically affirmed by the court in accordance with the usual procedure under § 77B.

At the time of the reorganization, the new company contemplated the abandonment of the "Black Process" of refining and planned entering into a refining management contract with the Sinclair Refining Company. To this end Mr. Ragland, attorney for the new company, employed a patent attorney to examine the license agreement in litigation for the purpose of ascertaining whether or not the new company would be liable for the payment of royalties if in the operation of a new plant, it ceased using the plaintiff's process.

The sale under the provisions of § 77B was completed and the new company thereupon entered into a refining management contract with the Sinclair Refining Company and under the said contract constructed a new refinery, and upon its completion abandoned the old plant using the "Black Process". The new company continued the payment of the royalties to the plaintiff up to the time of such abandonment.

Upon the ceasing of the payment of royalties, plaintiff had an interview with representatives of the defendant and was thereupon advised by the defendant that it was no longer using any of the inventions described in the licensing agreement of September 15, 1925. Plaintiff insisted that the patent issued upon application No. 599,403 was in use, thereupon defendant's representatives called plaintiff's attention to the fact that this invention was not included in the said licensing agreement. This conference was held in the month of October, 1938, and was the occasion when the plaintiff first learned that this invention had been omitted from said licensing agreement.

There is no contention that the defendant corporation is a continuation and reorganization of the Richfield Oil Company of California. Both parties recognize that the new company is a separate entity and the rights of the parties are definitely fixed by the agreement and plan of reorganization whereby the defendant became a purchaser, through the court, of the assets of the old company.

The licensing agreement in litigation is similar in form to the Transport agreement of October 30, 1924, and it is apparent that when Mr. Wellborn drafted the agreement of September 15, 1925, followed it as a model. It is noted that patent application No. 599,403 was also omitted from the first agreement. The evidence discloses that when the Transport agreement was drafted, plaintiff furnished the list of applications and patents to be included therein and both parties contemplated that the inventions of plaintiff should be specifically described therein. When the plaintiff furnished the said list to the drafter of the agreement of October 30, 1924, he believed the list was a complete list of his inventions and when he checked the list of inventions listed in the agreement of September 15, 1925, he also believed the list covered all of his inventions.

It is apparent that the failure of the licensing agreement in litigation to include application No. 599,403, was solely due to the inadvertence of the plaintiff.

When the plaintiff learned of the omission he instituted this action and in simple language seeks to have the court, through parol evidence, interpret the licensing agreement so as to include the omitted invention and if this cannot be done, through reformation insert into the agreement the said application No. 599,403.

On December 11, 1925, plaintiff entered into an agreement for the sale of all of his inventions conceived prior to December 1, 1925, to the Gasoline Products Company, Inc., for a consideration of $840,000, reserving, however, the rights to receive and retain, among other things, all sums of money paid by the Pan American Petroleum Company, under the licensing agreement of September 15, 1925. A list of inventions attached to the said agreement included application No. 599,403, the very application omitted from the agreement of September 15, 1925.

The said Gasoline Products Company, Inc., agreement contained the following recital:

"Whereas, the Pan American Petroleum and Transport Company and its subsidiaries and the Pan American Petroleum Company have an interest in certain of said inventions and Letters Patent as shown by the agreements, copies of which are hereto attached marked Schedule 'B' and".

It will be noted that the above quoted recital recognizes that the agreement of September 15, 1925, did not cover all of the plaintiff's inventions, which fact was sufficient to put the plaintiff on notice that he had failed to list all of his inventions in the Pan American Petroleum Company licensing agreement.

The defendant admits it is using the inventions described in the said application No. 599,403, but justifies their use under a licensing agreement with the Gasoline Products Company, Inc. (Defendant's Exhibits FF, GG and HH). But such licensing agreement specifically recognizes plaintiff's agreement in litigation and excludes therefrom all liability for the payment of any royalties in any invention of plaintiff's referred to in the said agreement of September 15, 1925.

At the trial the court admitted parol evidence subject to a motion to strike. The parol evidence so admitted clearly established that it was the intention of the parties to include the omitted patent. Defendant has made its motion to strike and it therefore becomes necessary for the court to determine whether such parol evidence is admissible as. to its first cause of action. Consequently, the court finds itself face to face with the parol evidence rule and the provisions of § 1856 and § 1858 of the Code of Civil Procedure of the State of California. In considering the admissibility of the parol evidence, I have not been unmindful of Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Even if said evidence were admissible, I would still be bound by the substantive law of the State of California when it comes to the applicability of said evidence to the contract in suit. Ruhlin et al. v. New York Life Insurance Company, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ostroff et al. v. New York Life Insurance Company, 9 Cir., 104 F.2d 986.

Industrious counsel on both sides have showered the court with citations and any attempt to analyze these citations would simply add length and confusion to this opinion. At this late date it requires no citation of authority to substantiate the rule that where the parties have reduced to writing what appears to be a complete and certain agreement in the absence of fraud, parol evidence of prior or contemporaneous conversations or statements is not admissible for the purpose of varying or adding to the terms of the written agreement.

The difficulty arises in the application of this rule. On this subject in 70 A.L.R. 752, we find the following language: "There are few subjects in the law seemingly as indefinite and uncertain of application as the so-called rule of integration, or merger of the prior or contemporaneous negotiations in the writing."

This authority, among others, cites West & West v. Kelly's Ex'rs, 19 Ala. 353, 54 Am.Dec. 192, which could be easily paraphrased to fit the present situation when the court said: "The general rule is admitted by all, that parol proof cannot be received to add to, detract from, vary, or contradict a written contract. But the application of this general rule to each particular case is frequently a task of difficulty, and has given rise to as many contradictory decisions, as any question with which courts have had to deal."

The plaintiff asks the court to interpret the said agreement so that it will in effect cover all of Black's inventions. He contends that the agreement discloses a general purpose for the licensing of all of Black's inventions, and that the specific description of the inventions is. simply helpful in pointing out the general purpose of the agreement. He further states his position by stating:

* * * Parol evidences may be received when the writing requires the light that they give for its interpretation. The writing may require this light either:

(a) Because the words which the writing employs are susceptible of more than one reasonable interpretation, or

(b) Because the words, while in themselves clear, are doubtful of application to the subject matter in dispute.

Certainly there can be no claim that the case at bar falls under the provisions of (a) and if plaintiff's position is correct he must come within subdivision (b).

Plaintiff maintains that a failure to construe the agreement as a broad grant would be placing a very narrow construction upon the agreement in question.

In approaching this situation I have endeavored to justify the admission of parol evidence, because I am firmly con-

vinced, by so doing, I would be putting into effect the real intentions of the parties. If my approach appears narrow, it is because I must follow well known salient provisions of the law and apply them as my best judgment dictates. It is not within my province to redraft the agreement but to interpret that which the parties have agreed to in writing.

■ Plaintiff further contends that the Petroleum Company drafted the contract and that therefore the agreement should be interpreted most strongly against it. This contention cannot be maintained for two reasons: First, an uncertainty must exist. In this agreement there is no uncertainty in the language used but an omission of application No. 599,403. Second, § 1654 of the Civil Code of California provides as follows:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; except in a contract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

The omission in this case was caused by plaintiff's own inadvertence.

■ It is further contended that the court should be guided by the practical construction placed on the agreement by the parties. It is true that the original parties at all times assumed that application No. 599,403 was included in the licensing agreement and the Petroleum Company and its successors had the use of said invention without the payment of additional royalties. But, such a practical construction is only available in the event of uncertainties in the written agreement itself (6 Cal.Juris. p. 304). Therefore, such practical construction will aid the plaintiff only in the event uncertainties or ambiguities exist in the written instrument.

■ I am of the opinion that in so far as the identification of the subject matter is concerned the licensing agreement is clear, positive and certain. The parties described with particularity the applications and patents that were to be covered by the licensing agreement, and for the court to interpret said agreement so as to include application No. 599,403, would be ingrafting an invention entirely

outside of it. Strong v. Carver Cotton Gin Co., 197 Mass. 53, 83 N.E. 328, 14 L.R.A.,N.S., 274, 14 Ann.Cas. 1182. It is difficult for me to see wherein I would be authorized to add to the agreement in this respect any more than I would be permitted to add to the payment of royalties. I feel this case comes clearly within the case of Wright-Callender-Andrews Co. v. Eaton, 47 Cal.App. 685, 191 P. 68, 69, wherein the court said:

"To our minds, the terms of the contract are perfectly clear, and it should be construed in accordance with the plain import of the language used therein. No reason was presented for the reception of parol evidence other than to add thereto terms which it did not, as written, include; and, as provided by section 1858, Code of Civil Procedure, when construing contracts of such character, 'the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted.' Including the automobile was clearly doing that which the judge is prohibited from doing by the provisions of the statute. Upon like evidence, since a written contract, however carefully drawn, would afford a party no protection, he could be completely divested of his substance. Authorities in support of the proposition would seem unnecessary. Suffice it to say that where parties deliberately and solemnly put their agreement in writing, using language which imports a complete expression of the whole agreement, the law presumes that they have introduced into it every material item and term intended to be inserted therein, and parol evidence cannot be admitted for the purpose of adding other terms or items thereto. Thompson v. Libby, 34 Minn. 374, 26 N.W. 1; Greenleaf on Ev., § 275; Harrison v. McCormick, 89 Cal. 327, 26 P. 830, 23 Am.St.Rep. 469."

See, also, Palm Springs-LaQuinta Development Co. v. Palm Springs Land & Irrigation Co. 36 Cal.App.2d 730, 98 P. 2d 530; Germain Fruit Company v. J. K. Armsby Co., 153 Cal. 585, 96 P. 319; 6 Cal.Juris. p. 249; Seitz v. Brewers' Refrigerating Mach. Co., 141 U.S. 510, 12 S.Ct. 46, 35 L.Ed. 837.

■ My position is further fortified by the provisions of § 3534 of the Civil Code of California, which provides: "Particular expressions qualify those which are general." This section is par-

ticularly applicable to the contract in litigation for the reason that the parties intended to specifically set forth the patents covered by the agreement. Plaintiff furnished the list in order that they might be specifically and accurately described. I believe the rule "expressio unius est exclusio alterius" applies in this case.

In Loyalton Electric Light Co. v. California Pine Box & Lumber Company, 22 Cal.App. 75, 133 P. 323, 324, the court very aptly said: "Where parties have entered into written engagements which industriously express the obligations which each is to assume, the courts should be reluctant to enlarge them by implication as to important matters. The presumption is that, having expressed some, they have expressed all, of the conditions by which they intended to be bound. Arthur v. Baron de Hirsch Fund, [2 Cir.], 121 F. 791, 58 C.C.A. 67. See, also, Maryland v. [Baltimore & O.] Railroad Co., 22 Wall. 105, 22 L.Ed. 713; [Delaware &] Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. 276, 19 L.Ed 349; Green v. American Cotton Co., C.C. 112 F. 743; Nims v. Vaughn, 40 Mich. 356; Amalgamated Gum Co. v. Casein Co. of America, C.C., 146 F. 900, 913." See, also, 17 Corpus Juris Secundum, Contracts, p. 730, § 312.

I believe that where a contract is clear and unambiguous, reformation is the remedy available to the parties. In this case the plaintiff is seeking the benefits of the parol evidence rule in order to insert into the agreement that which was omitted by inadvertence or mistake. In Foley v. Euless et al., 214 Cal. 506, 6 P.2d 956, the court used very pertinent language when it said:

"* * * If the provision was inadvertently or improperly omitted, the procedure would have been for plaintiff to seek a reformation upon proper pleadings and proof establishing his right thereto rather than to ask the court to make a contract in the premises. We therefore adopt the portion of the opinion of the District Court of Appeal, written by Mr. Justice Marks, which deals with the obligatory effect of the contract on respondents as part of the opinion of this court."

Inasmuch as I have concluded plaintiff cannot obtain the relief sought under his first cause of action, let us turn to a consideration of his second cause of action, wherein he seeks reformation of the licensing agreement so that it will include application No. 599,403.

Again we are brought face to face with a section of the code namely, § 3399 of the Civil Code of California, which provides as follows: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

The facts in this case justify reformation "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." Can reformation be granted without prejudicing the rights of the defendant? Did the defendant acquire the assets of the old Richfield Company for value? The statement of fact heretofore set forth furnishes the answer. The defendant is a third party. It purchased in good faith and the furnishing of $20,000,000 in capital would certainly be indicative of value. There is no evidence justifying the inference that the defendant had actual knowledge of the alleged defects in the agreement.

This brings into consideration the effects of the proceedings under said § 77B and the status of the property acquired by the defendant. In re Diana Shoe Corporation, 2 Cir., 80 F.2d 92; Mohonk Realty Corporation v. Wise Shoe Stores, Inc., 2 Cir., 111 F.2d 287; In re Corona Radio & Television Corporation, 7 Cir., 102 F. 2d 959, and Standard Steel Works v. American Pipe & Steel Corporation, 9 Cir., 111 F.2d 1000, cited by defendant all dealt with attempts to go back of the decree of the court by applying for relief in the pending reorganization proceedings, but in the case at bar the plaintiff is attempting to obtain relief by an independent action and naturally the question arises whether such an avenue of escape is open to him.

The plaintiff having failed to file any claim concerning the subject matter of this litigation after having due notice of all steps in the reorganization proceedings, is, in my opinion, now foreclosed from asserting his right to reform the licensing

agreement in question. The plaintiff filed a claim for the sum of $500 in the § 77B proceedings but filed no claim involving the said agreement. He had his opportunity, but failed to exercise it and I do not believe he has any greater right to attempt to alter the terms of the agreement, than if he should now claim that he made a mistake in filing his claim for $500, and now assert it should have been filed for $1,000.

Section 77B clearly indicates the purpose of the act and that all demands of every nature and description are discharged thereby (City Bank Co. v. Irving Trust Co. 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324), and § 77B, sub. h provides that all the property dealt with shall be free and clear of all claims. Remington on Bankruptcy, Volume 10, page 481, § 4616, suggests that the confirmation of a plan has the effect of a judgment in rem or quasi in rem. I hold that the agreement in suit acquired a definite status in the reorganization proceedings and that the plaintiff cannot now be heard in attempting to insert application No. 599,403 into the said agreement by reformation. He had his day in court and is bound by the order of confirmation and the injunction issued by the court enjoining the assertion of any claims against the defendant corporation herein.

By status, I mean that when this agreement passed through the crucible of the reorganization proceedings, the wording thereof became crystallized to the same effect as if the words had been carved in tablets of stone and the right to add to or vary the wording thereof has been completely foreclosed. The parties thereto might quarrel about the meaning of the words, but like words once spoken they cannot be recalled.

To hold otherwise would tend to nullify the effectiveness of the reorganization proceedings. The plaintiff can now no more add an additional patent application to the agreement by reformation than he can withdraw one of the patents described therein.

I may remark by the way of parenthesis that I am strongly of the opinion that the Gasoline Products Company, Inc., is also in the same category of an innocent third party. Plaintiff assigned all of his inventions to it, subject to the license agreement in litigation and reserving all sums payable under the said agreement. A reformation of the agreement, so as to include application No. 599,403, would in effect take something away from the Gasoline Products Company, Inc. that it had every reason to believe had been acquired under its agreement of purchase. Before any such relief should be granted to the plaintiff, the said Gasoline Products Company, Inc. should be made a party to this litigation. (See plaintiff's Exhibit 35 and defendant's Exhibit F). The record indicates plaintiff has parted title with the invention set forth in application No. 599,403 and is therefore unable to consummate such reformation.

In conformity with this opinion I hold that under plaintiff's first cause of action he is not entitled to have the said agreement interpreted so as to include patent application No. 599,403; and under the second cause of action, plaintiff is not entitled to reform the said licensing agreement. Under the authority of Citizens' Bank of Los Angeles v. Jones, 121 Cal. 30, 53 P. 354, I make no ruling on the motion to strike.