[Civ. No. 8185.   Third Dist.   Dec. 3, 1952.]

LEONARD H. RENSHAW et al., Appellants, v. HAPPY
VALLEY WATER COMPANY (a Corporation), Re-
spondent.

Alvin M. Cibula and Glenn D. Newton for Appellants.

L. C. Smith and Chenoweth & Leininger for Respondent.

VAN DYKE, J.—Plaintiffs and appellants began action to quiet title to certain real property located within the boundaries of the area served by the Happy Valley Water Company, a public utility corporation in Shasta County. The complaint was in the usual form. It alleged ownership in the plaintiffs, claims of interest on the part of the defendant and that such claims were without right. Defendant and respondent, Happy Valley Water Company, filed a cross-complaint wherein it claimed an interest in the property and also sought a decree reforming certain written instruments, the pleadings, and a final decree, in a partition suit to which appellants and respondent had been parties. Reformation was granted and the respondent was adjudged to have in the lands of the plaintiffs the interests it claimed.

The facts and circumstances out of which this controversy arose are as follows: The respondent water company is successor in interest to a former irrigation district which was dissolved in 1925. The decree of dissoluton declared liens upon the lands within the district in favor of respondent water company to the extent of $60 per acre, payable at the rate of $2.00 per acre per year. The decree required the landowners to purchase a certain amount of water annually from respondent. These liens and charges proved to be very

burdensome and the landowners found that sales could not be made advantageously and that loans could hardly be obtained at all. Through the years respondent acquired a considerable amount of the lands that had been within the dissolved district and in 1946 appellants purchased from respondents 160 acres of lands so acquired by it. By respondent's deed conveying the land to appellants there was reserved to the grantor: 1. An undivided one-half interest in such oil, gas and other minerals as might exist in the land with the right to enter the property to extract the same; 2. Rights of way over the land for all existing easements and such additional easements for ditches, canals, pipe lines and the like as respondent should thereafter determine to be necessary for the development of the lands and the performance of its public utility duties; 3. Rights of ingress for construction and repair. In addition to the foregoing reservations, the deed contained a covenant whereunder appellants as grantees waived any right to receive water service from respondent water company. The liens imposed by decree, due to the heavy burdens they cast upon all of the lands involved, including those of appellants, became the object of concerted action by interested parties, including the respondent water company. A compromise was arrived at whereby these liens could be discharged and various title companies joined with the landowners and the water company in working out a plan whereby the discharge of the liens could be established of record. By this plan interested landowners would group together and convey their lands to some person selected to act as an accommodation plaintiff in a partition suit. This person would convey a token interest to a title company and then file a suit in partition, joining the respondent water company and the newly created tenant in common as defendants. The respondent, having received the compromise consideration for its liens, would default and thereafter the token interest of the tenant in common would be reconveyed to the plaintiff and the proceeding would end with a decree quieting title in the plaintiff against the respondent's liens. The accommodation plaintiff would then reconvey the various parcels included in the suit to the parties who had conveyed to him. Appellants joined in one of these partition actions. The person selected to act as accommodation plaintiff was L. C. Smith, an attorney at law practicing in Redding, who was also the regularly employed attorney for the respondent company. Pursuant to the plan

appellants conveyed their property to Smith, but in the deed they made no reference to any of the liens, restrictions or reservations which appeared in the deed from the respondent to them. When Smith prepared the complaint in partition he also omitted to mention the reservations and restrictions in favor of respondent company and these reservations and restrictions were omitted from all of the proceedings thereafter, including the final decree. Respondent, notwithstanding this, permitted its usual default to be entered, so the result was that by the final decree in partition, title was quieted in appellants, and respondent lost all interest in the land. So far as the liens declared by the old dissolution decree were concerned, this result was according to plan. In the present action, and by cross-complaint, the respondent sought to reform the proceedings in partition so as to again reestablish the reservations, restrictions and covenants that were contained in its original deed conveying the land to appellants. It sought this reformation upon the ground of mistake.

The findings of the trial court were in favor of respondent, the court finding that the subject reservations, restrictions and covenants were omitted from the deed from appellants to Smith, the complaint, summons and decree in the partition action, and from the deed from Smith back to the appellants and that these omissions were all by the mutual mistake of the parties in that it was not intended by the partition action to eliminate these reservations, restrictions and covenants, but was the purpose only to eliminate the liens decreed by the old decree of dissolution. From the decree herein, reestablishing in favor of respondent the reservations, restrictions and covenants contained in its original deed to the appellants, this appeal was taken.

It is first contended by appellants that reformation must be denied because the mistake, if any, was not mutual, appellants arguing that the mistake was unilateral. ■ Reformation is proper where an instrument fails to express the intentions of the parties due to their mutual mistake and this principle is applicable to judgments and decrees. (*Douglass* v. *Dahm,* 101 Cal.App.2d 125 [224 P.2d 914].) ■ Equity will as readily reform a judgment as it will a deed or other document. (*Id.*) ■ By mutual mistake is meant a situation where both parties share the same misconception. (*National Auto. Ins. Co.* v. *Industrial Acc. Com.,* 27 Cal.App.2d 225, 227 [80 P.2d 1024].) In this connection it makes no

difference who wrote the instruments to be reformed so long as all parties were in common mistake as to what was contained therein. (*Jefferson* v. *Pietroroia*, 5 Cal.2d 222, 224 [54 P.2d 7].) ▉ Applying the above principles to the present case, the finding of mutual mistake is supported by the record. Smith testified that the only purpose of the suit was to eliminate the liens created by the decree of dissolution and that the presence or absence of the reservations from the descriptions used were never discussed. Witness Plotts testified that the sole purpose of the suit was to clear the land of the old liens, that it was taken for granted that the reservations, restrictions and covenants contained in the deed from the respondent to appellants would be preserved and that the respondent would not have defaulted in the partition suit had it been known that such claims would be eliminated. It seems clear that, accepting, as we must, the foregoing testimony that there had been no intention to effect the removal of any claims against the subject property except only the old liens declared by the dissolution decree, the parties throughout mistakenly failed to understand that the interests of the respondent reserved to it in its deed to the appellants were likewise being abolished. It is easy to understand how this came about. There was, of course, no necessity of setting forth these claims of the respondent in the deed to Smith, the accommodation plaintiff. But the omission thereof from the descriptions used in the partition proceedings made it incumbent upon the respondent to affirmatively set them up or lose them by default. It appears that it was not until quite some time after the decree had become final that respondent discovered what had happened. This discovery was made when appellants demanded water service and were refused. In the ensuing argument the respondent discovered what had occurred. Thereupon appellants brought this action to quiet title and respondent, pleading the mistake and asking reformation, successfully set up its claims against the property. We think the facts and the findings fully justified reformation.

It is contended that reformation of the decree in partition could not be had because it amounted only to a collateral attack upon a final judgment. But that is a misnomer of the action for reformation set up in the cross-complaint. Concerning such an action it was said in *Eichhoff* v. *Eichhoff*, 107 Cal. 42, 48 [40 P. 24, 48 Am.St.Rep. 110]:

"In fact, when an action is brought in a court of equity to set aside a judgment at law the attack, although not col-

lateral, is always indirect. (Freeman on Judgments, sec. 485.) The judgment is not under review, but an issue is being tried as to whether the plaintiff is entitled to have a court of equity interpose in his behalf. The judgment is not conclusive in such a case. The question to be determined is whether the adjudication was not procured by fraud or mistake. It may be said that in such a case the legal validity of the judgment is admitted, and it is because of its validity, or apparent validity, that the plaintiff requires to be relieved from it.''

■ It is contended that the reservations and restrictions decreed to exist in favor of respondent are illegal and void as against public policy, appellants arguing that a reservation of minerals not known to exist is illegal because it places a perpetual cloud upon the title. The contention is without merit. The reservation is a common one appearing in numberless deeds of record in this state. That mineral rights may be severed from the total ownership by grant or reservation see 58 Corpus Juris Secundum, ''Mines and Minerals,'' section 151, page 305. Such a reservation is not void because no time is fixed for claiming the rights reserved. (*Id.*, § 154, p. 312.) With respect to reservation of gas and oil, whether known or unknown, the objection made is not sound. ■ Natural oil and gas in place are generally not subject to absolute ownership apart from the soil and a grant or reservation thereof usually carries only an incorporeal right of servitude to explore for and extract such minerals from the soil, the estate in the oil and gas becoming vested and absolute only when it is actually found and reduced to possession. (*Id.*, § 155 (4), p. 320.) ■ As a general rule a grant or reservation of all minerals includes all minerals found on the premises whether or not known to exist. (*Id.*, § 155, p. 324.)

A number of other matters are argued by appellants but our examination of these contentions leads us to conclude they are in essence arguments based upon matters which are the subject of conflict in the evidence and which therefore are matters concluded in the trial court by its findings of fact.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J. pro tem., concurred.