UNITED STATES of America, Plaintiff,

v.

4.553 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF MONTEREY, STATE OF CALIFORNIA, John F. Doud, et al. (Hudson Group), Defendants.

No. 38881.

United States District Court N. D. California, S. D.

June 25, 1962.

128

Cecil F. Poole, U. S. Atty., Rodney H. Hamblin, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

T. J. Hudson, Hudson, Wyckoff & Parker, Monterey, Cal., for defendants Hudson group.

Edmond C. Ward, San Francisco, Cal., for defendant Doud.

OLIVER J. CARTER, District Judge.

On February 3, 1960, the government filed its condemnation action for the taking of a fee simple interest in 4.553 acres of land situated in the County of Monterey, State of California. Prior to the government take, and in 1889, the fee title to the land was owned by the Carmelo Land and Coal Company, a California corporation. On August 31, 1889, the Carmelo Land and Coal Company conveyed the fee title to the land to Francis Doud. In the deed conveying the property to Doud the Carmelo Land and Coal Company reserved the mineral interests in the following language,—

"* * * reserving and excepting therefrom all coal and minerals upon the same, and all rights to mine the same, and rights of way for railroads and other roads."

The fee title to the surface estate descended to John F. Doud, who has settled with the government for his interest. The parties have stipulated as follows:

"3. All parties stipulate that the Stipulation for Final Judgment entered into between defendant, John F. Doud, and plaintiff, executed on November 8, 1961, and Order thereon made and entered December 1, 1961, settled all the interests of defendant, John F. Doud, for the sum of $22,711.00, without interest, and defendant Hudson group has no interest in or claim to said sum heretofore paid to defendant John F. Doud."

The mineral interests have descended to the defendants Margaret Allan Hudson, Eunice Allan Riley, Helen Allan Burnette, Alexander M. Allan, and Florence M. Allan, herein referred to as the Hudson group. The parties have stipulated:

"4. At the time of the filing of the Complaint herein, the defendant Hudson group owned, in the 4.553 acres, 'all coal and minerals upon the same and all rights to mine the same and rights of way for railroads and other roads', but the rights of way for railroads and other roads are access rights for the purpose of extraction of coal and other minerals, and said access rights cannot be utilized for any purpose or pur

poses not connected with the extraction of coal and minerals."

At the pre-trial conference the parties stipulated:

"5. That the Court can decide the issue of the extent of the estate in the land owned by the defendant Hudson group, from the stipulations entered into between the defendant, Hudson group, and the plaintiff, and that extrinsic evidence by way of testimony or documents is not necessary and is waived.

"6. That the extent of the estate owned in the land by the defendant, Hudson group, is to be determined as of the date of execution of the deed, namely August 31, 1889, and the Court's interpretation is to be based upon the wording of the deed and the stipulations herein set forth."

██ The question before the Court then is to determine the extent of the estate in the land owned by the Hudson group so that the just compensation to be paid for the taking of that interest may be determined. Since this property is in California, the nature of the property interests is to be determined under the laws of that state, and the quantum and method of proving just compensation is a federal question, and is governed entirely by federal law. U. S. v. 70.39 Acres of Land, D.C., 164 F. Supp. 451, 479, 480. In California the owner of property containing mineral deposits may separate the mineral deposits from the other estates in the land. The rule is stated in 33 Cal.Jur.2d 234–235 as follows:

"The owner of mineral property, title to which was derived under laws other than the mining statute, may, like the owner of a mining claim, divide his lands horizontally as well as vertically, for the purpose of conveyance and ownership. He may by suitable conveyance dispose of it in its entirety, or of any part of the subsurface containing mineral deposits. A reservation from a grant of all minerals and rights related thereto creates in both grantor and grantee a fee simple estate, and thereafter the estates of the owner of the surface and that of the owner of the subterranean mineral strata are as distinct and separate as would be the ownership of respective owners of adjoining tracts of land."

See also: 58 C.J.S. Mines and Minerals § 151, page 305.

This rule seems to be borne out by the holdings in the cases of In re Barlow v. Security T. & S. Bank, 197 Cal. 263, 267, 268, 240 P. 19; Graciosa Oil Co. v. Santa Barbara County, 155 Cal. 140, 144, 99 P. 483, 20 L.R.A.,N.S., 211; and Renshaw v. Happy Valley Water Co., 114 Cal. App.2d 521, 526, 250 P.2d 612, 615. In the latter case it was also held:

"As a general rule a grant or reservation of all minerals includes all minerals found on the premises whether or not known to exist." (114 Cal.App.2d 526, 250 P.2d 615).

██ In accordance with this rule the 1889 deed, by the reservation as quoted, created in the Hudson group a fee simple estate in "all coal and minerals upon" the property. It also created easements on the remainder of the property in favor of the mineral estate of "all rights to mine the same, and rights of way for railroads and other roads." The parties have recognized that the easement reserved is one for right of access to mine for coal and other minerals, and is limited to that purpose by stipulation. Therefore the government is taking two fee simple estates in the property, and the easement over one in favor of the other. That the division of the fee estates is on a horizontal rather than the traditional vertical basis should make no difference in basic principles of land valuation to be applied. The Hudson group is entitled to just compensation for the interests taken. This is the fee simple estate in the minerals, together with the easement of access to mine the same. The latest United States Supreme Court case to announce this principle is

U. S. v. Virginia Electric & Power Co., 365 U.S. 624, 633, 81 S.Ct. 784, 5 L.Ed. 2d 838, where the Court said:

"The guiding principle of just compensation is reimbursement to the owner for the property interest taken. 'He is entitled to be put in as good a position pecuniarily as if his propery had not been taken. He must be made whole but is not entitled to more.' Olson v. United States, 292 U.S. 246, 255 [54 S.Ct. 704, 78 L.Ed. 1236]. In many cases this principle can readily be served by the ascertainment of fair market value—'what a willing buyer would pay in cash to a willing seller.' United States v. Miller, 317 U.S. 369, 374 [63 S.Ct. 276, 87 L.Ed. 336]. See United States v. Commodities Corp., 339 U.S. 121, 123 [70 S.Ct. 547, 94 L.Ed. 707]; United States v. Cors, 337 U.S. 325, 333 [69 S.Ct. 1086, 93 L.Ed. 1392]. But this is not an absolute standard nor an exclusive method of valuation. See United States v. Commodities Corp., supra [339 U.S.], at 123 [70 S.Ct. at 549]; United States v. Cors, supra [337 U.S.], at 332 [69 S.Ct. at 1090]; United States v. Miller, supra [317 U.S.] at 374–375 [63 S.Ct. at 280]; United States v. Toronto Nav. Co., 338 U.S. 396 [70 S.Ct. 217, 94 L.Ed. 195]."

The real question is how these interests should be evaluated and what testimony is permissible to establish such valuation. In pre-trial conference the parties agreed that the highest and best use of the land was for residential purposes, and the Hudson group contend that it is not only entitled to compensation for the value of the mineral estate taken, but also the value of the easement of the right to mine and access for that purpose over the remainder of the land, including the surface. In this respect the Hudson group indicates that it should participate in the value of the surface for residential purposes to the extent that its mining easement "effectively precludes development for residential or commercial pur-

poses on the subject property." The government contends that the mineral estate is valueless, and that the easement for the purpose of access to mine in such a case is equally valueless. The contentions of both parties raise questions which must be determined from the facts. However, the admissions and stipulations of the parties delineate the basic principles to be applied.

■ First, since the minerals have been separated from the land by the reservation of a separate fee estate therein, they may be valued separately from the land to the extent that they have any market value as a whole. State by and through State Highway Commission v. Arnold, 218 Or. 43, 341 P.2d 1089, 1104, 343 P.2d 1113; Eagle Lake Improvement Co. v. U. S., 5 Cir., 1944, 141 F.2d 562. This does not mean that the mineral values can be based on a computation of the quantity available multiplied by the price per unit at which the mineral is sold on the open market, but it is the market value of the whole interest taken. United States v. 13.40 Acres of Land in City of Richmond, (D.C., N.D.Cal., 1944), 56 F.Supp. 535, 538; United States v. Land in Dry Bed of Rosamond Lake, Cal., (D.C., S.D.Cal., 1956), 143 F.Supp. 314.

■ Second, the easement to mine and for access to mine, being an easement over the fee interest in the land other than the fee reserved in the minerals, referred to by the parties as the surface fee, may be valued in connection with relationship to the surface fee. Here U. S. v. Virginia Electric & Power Co., supra, controls. See also Augusta Power Co. v. U. S., 5 Cir., 1960, 278 F. 2d 1. The easement to mine and for access to mine by its very nature has a potential for damaging or destroying the surface fee. In this respect it is similar to the flowage easements in the Virginia Electric & Power Co. and Augusta Power Co. cases, although its potential for damage or complete destruction, if used, might not be as great. However, the underlying principle is the same, and the tests used in those

cases should apply here. Therefore, the value of the easement here is its value to the owners, the Hudson group, taking into consideration all the uses and purposes to which it could be put. The maximum value which can be given, however, is the difference in the value of the land, excluding minerals, with and without the easement. The valuation witnesses may consider probabilities of the actual exercise of the mining easement, and what relationship the easement had to the value of the surface fee. Within this framework the parties may submit evidence as to the value of the interests taken. The trial on the issue of just compensation will be set on the motion of either party.