[Civ. No. 205.   Fifth Dist.   Jan. 29, 1963.]

EDWARD A. JACKSON et al., Plaintiffs and Appellants, v. CONTINENTAL TELEPHONE COMPANY, Defendant and Respondent.

S. B. Gill, Howard Thomas, Thomas, Snell, Jamison, Russell, Williamson & Asperger, Elke, Farella & Braun, Thomas Elke and Jerome I. Braun for Plaintiffs and Appellants.

Orrick, Dahlquist, Herrington & Sutcliffe, Mack, Bianco, King & Eyherabide, Christopher M. Jenks and B. L. Hoisington for Defendant and Respondent.

CONLEY, P. J.— The plaintiffs, who, as stockholders in Central California Telephone Company, a California corporation (hereinafter called Central California), instituted this fraud suit against the former directors and majority stockholders of Central Western Corporation (hereinafter called Central Western) and joined Continental Telephone Company, a corporation, which is the surviving constituent corporation after merger with Central Western.

The Continental Telephone Company, incorporated under the laws of Delaware with its executive offices in St. Louis, was served with process through the delivery by hand in this state to its vice president, John P. Maguire, a resident of California, of a copy of the complaint and summons. (Code Civ. Proc., § 411, subd. 2; Gov. Code, § 6500.) The corporation appeared specially for the purpose of moving to quash service of summons upon itself on the ground that the court ". . . lacked jurisdiction over the Continental Telephone Company, which does no business in California." The motion was based upon the notice of motion, a declaration of J. P. Maguire, a memorandum of points and authorities and the pleadings, records and files in the case. The trial court granted the motion to quash, and plaintiffs appealed. (Code Civ. Proc., § 963, subd. 4.)

The plaintiffs, Dr. Edward A. Jackson, Helen C. Jackson, Charlotte Landram, Elizabeth Ball Uhl, John Bailey and Roland F. Hill, as guardian of the persons of Gayle Sharon Hill, Jerrie Lane Hill and Roland F. Hill, Jr., stockholders of

Central California, brought this action on behalf of themselves and other shareholders similarly situated against the individual defendants and Continental Telephone Company, a corporation. The defendants, John P. Maguire, W. Gilman Snyder, Ben Sill, John M. Brock, J. Calvert Snyder, Harold O. Robertson, J. Thomas Maguire, William H. MacDonald and Don E. Keith, were directors of and owned the controlling interest in Central California and Central Western; they allegedly secured for themselves excessive benefits by reason of the alleged fraud which forms the basis of the action. The other two individual defendants, Philip J. Lucier and Charles Wohlstetter, were directors and executive officials of Continental Telephone Company.

The theory of the complaint is that the defendants were guilty of fraud toward the plaintiffs and other stockholders of Central California; it is alleged that the individual defendants and Central Western induced the plaintiffs as stockholders of Central California to sell their shares to Central Western on the representation that the latter corporation would soon thereafter issue additional stock which would be made available at reasonable rates to the plaintiffs for purchase; but that thereafter the defendants retracted the promise to issue and sell such additional stock, then knowing, but keeping secret from the plaintiffs, a plan for Central Western to merge with Continental Telephone Company; that the individual defendants and Central Western did not advise the plaintiffs of these facts, which they knew and which they should have disclosed by reason of confidential relationship with the plaintiffs; that the plaintiffs did not accept an offer to repurchase the stock which they had sold to Central Western by reason of the fraud; that thereafter Central Western merged with Continental Telephone Company and that Continental Telephone Company, as the surviving corporation is liable for the same reasons and to the same extent that Central Western would have been if the merger had not taken place.

The merger agreement between Central Western and Telephone Communications Corporation, a Delaware corporation (the name of which was changed to the present form, Continental Telephone Company), contains the following provision in its article sixth, paragraph 2:

"(b) . . . all rights of employees and creditors and all liens upon the property of the Constituent Corporations, and each of them, shall be preserved unimpaired, limited in lien to the property affected by such liens at the effective date of

the Merger, *and all the debts, liabilities, and duties of the Constituent Corporations shall attach to the Surviving Corporation, and shall be enforceable against the Surviving Corporation to the same extent as if all such debts, liabilities and duties had been incurred or contracted by it."* (Emphasis added.)

Appellants contend that when a court has jurisdiction of the subject matter of a suit, the litigants may effectively consent to jurisdiction over the parties (*Harrington* v. *Superior Court,* 194 Cal. 185, 188 [228 P. 15] ; *Northington* v. *Industrial Acc. Com.,* 23 Cal.App.2d 255, 259-261 [72 P.2d 909] ; 21 C.J.S., Courts, § 85, pp. 133-134), and that such consent may be given before as well as after an action is commenced. (*Frey & Horgan Corp.* v. *Superior Court,* 5 Cal.2d 401, 404-405 [55 P.2d 203].)

The conclusion thus urged by the appellants is coincidental with the express provisions of section 4116 of the Corporations Code : "Upon merger . . . the separate existence of the constituent corporations ceases, and the . . . surviving corporation shall succeed, without other transfer, to all the rights and property of each of the constituent corporations, *and shall be subject to all the debts and liabilities of each, in the same manner as if the . . . surviving corporation had itself incurred them."* (Emphasis added.)

In *Mutual Bldg. & Loan Assn.* v. *Wiborg,* 59 Cal. App.2d 325, 329 [139 P.2d 73], the conception of what happens upon the merger of corporations is thus forcefully expressed :

"Although the distinct corporate entity of Title Guarantee passed out of existence or became extinct upon the completion of the act of consolidation, its corporate activities did not cease but were continued and carried on through the new channel. (*Mercantile Trust Co.* v. *San Joaquin Agricultural Corp., supra* [89 Cal.App. 558 (265 P. 583)].) While the Title Guarantee merger with Title Insurance caused it to lose its identity as to its separate existence, yet it became an integral part of Title Insurance, and carried with it all of its rights, powers, liabilities, and assets 'except the indicia and attributes of a corporate body distinct from that into which it is merged.' (*MacElwain Co.* v. *Primavera,* 180 App. Div. 288 [167 N.Y.S. 815].) The consolidation did not create an entirely new entity but 'merely directs the blood of the old corporation into the veins of the new, the old living in the new.' (*Estate of Barreiro, supra* [125 Cal.App. 153, 167 (13

P.2d 1017)].)'' (See also *J. C. Peacock, Inc.* v. *Hasko*, 196 Cal.App.2d 363, 368-370 [16 Cal.Rptr. 525]; 1 Ballantine & Sterling, California Corporation Laws (4th ed 1962), § 331, p. 582.)

The record shows that Telephone Communications Corporation (now Continental Telephone Company) and Central Western applied to the California Commissioner of Corporations for approval of the agreement of merger and that a permit was issued to the former approving the merger and the issuance of stock as requested. Findings of fact and conclusions of law, signed and filed by the commissioner, recite that the Telephone Communications Corporation applied for a permit for the issuance of securities and the disposition thereof in the state. The record includes a copy of the permit showing that leave was granted to the Telephone Communications Corporation to issue 275,250 shares of its common stock to the holders of 91,750 common shares of Central Western Corporation, to issue 3,628 shares of its 5 per cent preferred stock to the holders of 3,628 shares of the outstanding 4½ per cent preferred stock and 5 per cent preferred stock of Central Western, and to issue 63,000 shares of its common stock to the shareholders of Medusa Equipment Corporation in exchange for its 1,000 issued and outstanding common shares. In its declaration in support of its motion to quash service of summons, the defendant corporation alleges that it owns all of the stock of a California equipment leasing corporation, all of the stock of a California telephone service company, all of the stock of a California public utility company, and controlling stock interests in two other California corporations furnishing public utility telephone service in California.

In legal effect, the Continental Telephone Company is, among other things, the Central Western, and both under the specific agreement of the parties to the merger and the laws of the state, Continental Telephone Company became liable to suit by creditors of Central Western. It is argued by respondent that the merger agreement and the code section in question (Corp. Code, § 4116) do not specifically state that creditors have the right to sue in California, as distinguished from other states. This contention is contrary to common understanding and to common sense, and it cannot be approved. For one of the most jealously guarded rights of any claimant is the right to bring his suit within the limits of his own local jurisdiction.

■ *Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 224 [1 Cal.Rptr. 1, 347 P.2d 1], points out: "Code of Civil Procedure, section 411, subdivision 2, authorizes service of process on foreign corporations that are 'doing business in this State.' 'That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause. " '[D]oing business' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process." (*Eclipse Fuel etc. Co.* v. *Superior Court,* 148 Cal.App.2d 736, 738 [307 P.2d 739]. . . .)' "

■ On page 225 of the opinion a number of tests of the activities of a foreign corporation within a state are said to be relevant to the question: "The interest of the state in providing a forum for its residents [citation] or in regulating the business involved [citation]; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations]; the ease of access to an alternative forum [citation]; the avoidance of multiplicity of suits and conflicting adjudications [citations]; and the extent to which the cause of action arose out of defendant's local activities [citations] are all relevant to this inquiry."

■ None of these tests is adverse to the jurisdiction of the California courts in the instant suit. It would appear that at the time of service of summons respondent was "doing business in this State" within the meaning of section 411, subdivision 2, of the Code of Civil Procedure, that it is proper to try this litigation here and that any other conclusion would violate the express consent of the parties and the applicable code law with respect to mergers.

The order quashing the service of summons is reversed with directions to the trial court to enter an order denying the motion to quash and giving the Continental Telephone Company, a corporation, a reasonable time within which to file a general appearance in the suit.

Brown, J., and Stone, J., concurred.