[Civ. No. 738.   Fifth Dist.   July 26, 1967.]

K. C. HAWKINS, Plaintiff and Appellant, v. EDWARD J. REHFELDT, Defendant and Respondent.

McKenzie, Arata & Maggini and Gordon McKenzie for Plaintiff and Appellant.

Young, Wooldridge, Paulden & Self and John B. Young for Defendant and Respondent.

CONLEY, P. J.—In 1951, plaintiff K. C. Hawkins, an Illinois physician and surgeon, defendant Edward J. Rehfeldt, and one Hanson formed a corporation known as Transonic, Inc. to deal in electronic equipment; the three were then the sole owners of the capital stock of the organization. In 1957,

Mr. Rehfeldt purchased the stock previously owned by Hanson, and in 1958, the stock of the plaintiff, Hawkins. The latter sale was accomplished on January 11, 1958, in Las Vegas, Nevada. Each of the two parties had his attorney with him in Las Vegas, but at the time of the execution of the agreement here in question the stockholders were alone, the attorneys not being in the room. The record indicates that Dr. Hawkins was then paid $7,000 for all of his stock, and that, in addition, Mr. Rehfeldt executed and delivered to Dr. Hawkins the following writing: ''I, Edward J. Rehfeldt herewith agree that if in the next fifteen years, I sell fifty per cent or more of Transonic Inc. stock of which I am sole owner, I will pay Dr. K. C. Hawkins or his heirs One Hundred Thousand dollars, if I sell Transonic stock for more than Two Hundred Thousand Dollars. Dr. Hawkins One Hundred Thousand dollar value will be paid less the capital gains tax on that amount.''

The trial court found that the contract in question was executed as part of the consideration for the purchase of Dr. Hawkins' stock.

As a result of buying out his fellow stockholders, Mr. Rehfeldt owned all of the issued shares of Transonic, Inc. stock in 1958. After that time, by his adoption of the razzle-dazzle of commercial exploitation by stock splits and bonus payments, he mathematically expanded his identical stock into more than 200,000 shares of Transonic, Inc. stock. From time to time, he thereafter sold several blocks of the stock for a total of $161,908.35; then, in 1962, Transonic, Inc. consolidated with Jamieson Laboratories, Inc. to form a new corporation known as Jamieson Industries, Inc. Rehfeldt testified that this was actually necessitated because a creditor bank called a $150,000 note, and that there was no alternative to such consolidation except bankruptcy. The consolidation as spelled out by the testimony of an attorney who had been secretary of Jamieson Laboratories, Inc., was effected pursuant to statute, the plan being that the two constituent corporations would go out of existence and a new corporation spring into being as the ''resulting corporation.''

Thereafter, in 1964, Rehfeldt sold some 5,500 shares of Jamieson Industries, Inc. stock from the sale of which he secured $18,000 or $19,000. As a result of the consolidation, Rehfeldt received what were said to be 119,000 shares of Jamieson Industries, Inc. in exchange for his 200,000 shares of Transonic, Inc.

Appellant argues that because the agreement was drafted

by the defendant and because there was some testimony that the value of the resulting Jamieson Industries, Inc. stock was at one time $4.75 per share and defendant owned 119,000 shares of the new company at a consequent total value of $565,000, consolidation was equivalent to a sale of the Transonic, Inc. shares and under the agreement he should have paid.

As stated in the pretrial order and conceded in the briefs of appellant and respondent, there were initially only two questions in the case:

1) Was there a sale within the meaning of the agreement by virtue of the consolidation? and

2) Did the defendant receive consideration in excess of $200,000 as a result of the sale of his Transonic, Inc. stock?

Whether or not Dr. Hawkins made a bad bargain is immaterial; obviously, as things turned out, it was a bad bargain. But we must decide whether the conditions precedent to the payment of the $100,000 as established by the contract have been met.

It seems clear that, in order to recover, the plaintiff would have had to establish that the defendant sold at least 50 percent of the total Transonic, Inc. stock owned by him for more than $200,000.

The whole case turns on whether the consolidation was a sale within the meaning of the contract. If it was not, the evidence concededly does not show the sale of 50 percent of Rehfeldt's Transonic stock, and the selling price of the stock sold was less than $200,000. On the other hand, if the consolidation was a sale within the meaning of the contract, all of the Rehfeldt stock was sold and the consideration was well over $200,000.

The procedure for consolidation is contained in sections 4100 et seq. of the Corporation Code; in those sections, "sale" of stock during the specified procedures is mentioned only in a situation where there are dissenting shareholders, who elect to take advantage of provisions in the statute. Clearly, Rehfeldt was in no sense a dissenting shareholder.

In the Internal Revenue Code (26 U.S.C.A.), section 354, subdivision (a)(1), it is stated that: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." And in section 368, subdivision (a)(1)(A), it is stated that for

purposes of parts I and II and "this part," the term "reorganization" means a statutory merger or consolidation. (See 19 Corpus Juris Secundum, Corporations, § 1627, p. 1387 and *Mercantile etc. Co.* v. *San Joaquin etc. Corp.*, 89 Cal.App. 558, 571 [265 P. 583]; *Mutual Bldg. & Loan Assn.* v. *Wiborg,* 59 Cal.App.2d 325, 329 [139 P.2d 73]; *J. C. Peacock, Inc.* v. *Hasko,* 196 Cal.App.2d 363, 369 [16 Cal.Rptr. 525]; *Jackson* v. *Continental Tel. Co.*, 212 Cal.App.2d 510, 513 [28 Cal.Rptr. 1].)

It is to be noted that the written contract between the parties mentions a potential tax on capital gains, so a "taxable" or money sale was obviously contemplated in the agreement written by Rehfeldt.

In *Mercantile etc. Co.* v. *San Joaquin etc. Corp., supra,* 89 Cal.App. 558, 571, the court said such a consolidation is "merely the joint transfusing of the blood of the constituent corporations into the veins and arteries of a new single corporate entity, that they may enlarge and extend the scope and business ramifications of their own corporate purposes. . . ."

We conclude that the written contract contemplated a "sale" measured by money as the medium of exchange, and the passage of the title of the stock to a purchaser, and that, consequently, the record does not support appellant's contention that Rehfeldt sold 50 percent or more of his shares of Transonic, Inc., or that he received more than $200,000 for a sale of his stock.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.