[Civ. No. 14046. Third Dist., Nov. 18, 1974.]

V. HAL TREADAWAY, Plaintiff and Appellant, v.
CAMELLIA CONVALESCENT HOSPITALS, INC., et al., Defendants
and Respondents.

## COUNSEL

Downey, Brand, Seymour & Rohwer and Joseph D. Genshlea for Plaintiff and Appellant.

Rowland, Clowdus & Parker, Rowland & Parker, Dahl, Hefner, Stark, Marois & James, Archie G. Parker and John D. Bessey for Defendants and Respondents.

## OPINION

**JANES, J.**—Plaintiff appeals from a judgment which declares the amount of annual rental due to plaintiff, as lessor, from defendant Camellia Convalescent Hospitals Corporation, a Delaware corporation ("Del-Camellia"), under a written lease dated August 1, 1968.

This case presents an issue of first impression—namely, whether there can be reformation of a written contract after a party to it, a corporation, has been merged into another corporation which thereby succeeded to the contract, where the latter corporation, having survived the merger, opposes reformation, resisting on the ground that it acquired the contract for value and without notice that the written terms thereof did not reflect the actual agreement of the contracting parties.

### FACTS

Del-Camellia was not the original lessee under the subject lease. The original lessees were Helen M. Peterson, Jack D. Carter, and Camellia Con-

valescent Hospitals, Inc., a California corporation ("Cal-Camellia"). Peterson and Carter signed the lease as individuals and as officers of Cal-Camellia on its behalf. Plaintiff was the first and only lessor. The lease was of real property in Woodland, California, including a hospital facility to be constructed by renovation of an existing building.

In relevant part, the rental formula in the lease provided as follows: "As rentals hereunder Lessees shall pay annually an amount equal to eleven percent (11%) of the aggregate of (a) the cost of the real property to Lessors which it is agreed shall be the sum of THIRTY-FIVE THOUSAND DOLLARS ($35,000), and (b) the actual cost of the improvements to be constructed on the real property by Lessors. 'Cost of the improvements,' as used herein shall be construed to be the actual cost of construction including contractors F.H.A. [Federal Housing Administration] allowable overhead and profit, F.H.A. allowable architect's fee, interest during construction, taxes during construction, property insurance during construction, mortgage insurance premium during construction, F.H.A. examination and inspection fees, title and recording expense, financing and loan discount expense, legal and organization expense. The parties hereto acknowledge that F.H.A. requires that the Lessors submit on F.H.A. forms No. 3378 and 3378A all items of cost for approval. 'Cost of the improvements' shall not exceed EIGHT HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($875,000), including the cost of the real property referenced above."

The original parties to the lease all understood that the annual rent would be 11 percent of the total F.H.A. allowable costs—such costs not to exceed $875,000. Those parties all understood that the F.H.A. allowable costs were to include not only the F.H.A. certified costs of renovating the existing building but also the F.H.A. appraised value of that building prior to renovation, as well as the F.H.A. appraised value of the land. However, as a result of careless drafting of the lease by an agent of plaintiff (copying of an earlier lease where bare land was developed), the written rental formula failed to include the F.H.A. appraised value of the existing building.

Subsequently, in the spring of 1969, Cal-Camellia was merged into Gilmedco, Inc., a Delaware corporation ("Gilmedco").[1] As a result of this merger, Gilmedco acquired the assets of Cal-Camellia (including the Woodland lease, of which Cal-Camellia had become sole lessee). As consideration for the acquisition, the shareholders of Cal-Camellia received shares of stock in both Gilmedco and Gilmedco's parent company, Gilbert Shoe

---

[1] "A merger is the absorption of one or more corporations by an existing corporation which survives and continues the combined business. A consolidation is the union of two or more existing corporations to form a new corporation." (2 Ballentine & Sterling, Cal. Corporation Laws (4th ed. 1974) § 318, p. 565.) (Fns. omitted.)

Stores, Inc., an Ohio corporation which thereafter became The Gilbert Companies, Inc., a Delaware corporation.

In May 1969, Gilmed, Inc., a Delaware corporation, was formed and acquired full ownership of Gilmedco (the surviving corporation of the merger with Cal-Camellia). Gilmed, Inc., in turn, was partially owned by The Gilbert Companies, Inc.

In May 1969, Gilmedco changed its name to Camellia Convalescent Hospitals Corporation (defendant "Del-Camellia" herein), which was lessee of the Woodland property when judgment was entered in this action.

The renovated hospital facility was completed and ready for occupancy in September 1969.

Some time after the 1969 merger, a dispute arose between plaintiff and Del-Camellia with respect to the formula for computing the rent due under the lease. This action ensued. Plaintiff's complaint alleged two causes of action—one seeking reformation of the rental formula in the lease on the ground of *unilateral* mistake, the other for a declaratory judgment interpreting the rental formula. Gilmed, Inc., and The Gilbert Companies, Inc., are defendants herein with Del-Camellia (sued as a Doe). Cal-Camellia made no appearance. Prior to trial, plaintiff voluntarily dismissed Peterson and Carter as defendants. During trial, plaintiff voluntarily dismissed the cause of action for reformation.

The cause of action for declaratory relief alleged that the cost of the existing building (approximately $240,000), rather than the F.H.A. appraised value, was to be included in the rental formula. At trial, however, plaintiff proceeded on the theory that the F.H.A. appraised value was to be used.

### THE APPLICABLE STATUTES

In relevant part, section 4116 of the Corporations Code provides: "Upon merger or consolidation pursuant to this article, the separate existence of the constituent corporations ceases, and the consolidated or surviving corporation shall succeed, without other transfer, to all the rights and property of each of the constituent corporations, *and shall be subject to all the debts and liabilities of each, in the same manner as if the consolidated or surviving corporation had itself incurred them.* [¶] All rights of creditors and all liens upon the property of each of the constituent corporations shall be preserved unimpaired, limited in lien to the property affected by such liens immediately prior to the time of the consolidation or merger." (Italics

added.)[2] Section 4116 applies to the merger or consolidation of any domestic corporation with a foreign corporation, and to the effect of such merger or consolidation. (Corp. Code, § 4121.)

Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by *third persons, in good faith and for value*." (Italics added.)

### FINDINGS AND JUDGMENT

The trial court found that, because of the error of the draftsman, the rental formula in the lease was inconsistent with the understanding of the original parties to it. However, the court also found that Gilmedco (now Del-Camellia) was a "third person" within the meaning of Civil Code section 3399 and that, at the time of the merger, Gilmedco had acquired the lease "for value" and "in good faith" (i.e., without actual or constructive notice of the true understanding of the original contracting parties).

Accordingly, having also found that Del-Camellia would be prejudiced if the written formula were revised to include the F.H.A. appraised value of the building prior to renovation,[3] the court held that section 3399 barred plaintiff from obtaining reformation and that the actual understanding of the original parties was not a "debt" or "liability" within the meaning of Corporations Code section 4116 and did not bind Gilmedco (now Del-Camellia), the surviving corporation of the merger. Other findings will be mentioned during our discussion of the issues on appeal.

The court therefore entered a declaratory judgment which decreed that plaintiff was entitled to annual rental from Del-Camellia under the lease

---

[2]"Constituent corporation" means a corporation which is merged or consolidated with one or more other corporations, and, in case of a merger, includes the surviving corporation. (Corp. Code, § 4102.) "Surviving corporation" means the corporation into which one or more other corporations are merged, and "consolidated corporation" means the new corporation into which two or more other corporations are consolidated. (Corp. Code, § 4101.)

[3]The court found that the F.H.A. allowable costs totaled $920,000—i.e., the sum of the F.H.A. appraised value of the land and original building ($212,000) plus the F.H.A. certified costs of renovation ($708,000). Therefore, if the actual agreement of the lease signatories controlled (rather than the written lease), the annual rental would be $96,250 (11 percent of the $875,000 agreed maximum F.H.A. allowable costs). In contrast, under the written lease, the annual rental would be $81,730—i.e., 11 percent of (a) the $35,000 "agreed" cost of the "real property" and (b) the $708,000 F.H.A. certified costs of renovation.

based upon a formula which omitted the F.H.A. appraised value of the unrenovated building, resulting in a lower annual rental than would have been payable under the original parties' actual agreement. (See fn. 3, *supra.*) In view of its findings and conclusions concerning the bar of Civil Code section 3399, the court made no determination concerning plaintiff's additional allegations that Gilmedco (now Del-Camellia) was an *alter ego* of Gilmed, Inc., and that Gilmed, Inc., was an *alter ego* of Gilbert Shoe Stores, Inc. (now The Gilbert Companies, Inc.). Nor did the court rule upon defendants' affirmative defenses that plaintiff was estopped and was precluded by waiver and laches from obtaining reformation of the lease.

## Contentions

Plaintiff agrees with the trial court's finding that, at the time the lease was executed, the original parties to it all understood that the F.H.A. appraised value of the existing building was to be included in the rental formula. ▇ Plaintiff contends, however, that the court erroneously determined that the language used in the written formula was patently inconsistent with the parties' actual agreement.

The court did not err in this respect. In the written formula, "the cost of the real property to Lessors" was expressly agreed to be $35,000— not the F.H.A. appraised value of the land and original building, which was $212,000. The "actual cost of the improvements" was limited in the formula to those improvements "to be" constructed on the property, and therefore excluded existing improvements. The formula clearly was 11 percent of the aggregate of $35,000 plus the cost of future improvements, such aggregate not to exceed $875,000. As stated in the findings, the lease was "bereft of language or suggestion that such an interpretation [as plaintiff urges] was intended or was possible."

Although an express finding was neither made nor requested as to whether the original parties mistakenly believed that the written lease reflected their actual agreement, there is no suggestion that they knew of the error when they signed the lease or that they intended that the writing would be a nullity (See Witkin, Cal. Evidence (2d ed. 1966) § 740, p. 686.) A finding that the original parties were mutually mistaken in this respect is implicit in the findings that "there was a mistake in the lease" and that "the failure of the Woodland lease to express the understanding of the parties to it in regard to the rent formula was caused by careless drafting . . . by Plaintiff's agent. . . ."

▇ Plaintiff argues that there was no "mutual mistake" in the sense that such term is used in Civil Code section 3399 because, *as between*

the original parties, there was no misunderstanding concerning the method of computing rental. Such argument misconceives the nature of the mutual mistake to which section 3399 refers. Reformation, on the ground of mutual mistake, presupposes actual agreement (i.e., no mistake) between the contracting parties as to what they intend, but further presupposes that all parties mistakenly believe that the written contract expresses their intention. (Civ. Code, § 3399; *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 663 [297 P.2d 638]; *Shupe* v. *Nelson* (1967) 254 Cal.App.2d 693, 699-700 [62 Cal.Rptr. 352]; *Campbell* v. *Republic Indemnity Co.* (1957) 149 Cal.App.2d 476, 479-480 [308 P.2d 425]; *Renshaw* v. *Happy Valley Water Co.* (1952) 114 Cal.App.2d 521, 524-525 [250 P.2d 612].)

Accordingly, since plaintiff sought from the trial court a declaration that the F.H.A. appraised value of the existing building should be utilized in the formula despite the fact that the lease could not be so construed, the court properly determined as a conclusion of law that, notwithstanding plaintiff's dismissal of his cause of action for reformation, he was in effect "seeking relief by way of reformation in his . . . [remaining] cause of action for declaratory relief, and as such, must be bound by the provisions of Civil Code, Section 3399." (See 3 Witkin, Cal. Procedure (2d ed. 1971) § 710, p. 2333; *Putnam* v. *Putnam* (1942) 51 Cal.App.2d 696 [125 P.2d 525].)

■■■ Plaintiff correctly contends, however, that the trial court erred when it held that the surviving corporation, Gilmedco (now Del-Camellia), was, within the meaning of section 3399, a "third person" which had acquired the lease "in good faith [i.e., without actual or constructive notice] and for value."

We deal here with a statutory merger (Corp. Code, § 4100 et seq.). This case does not arise from a de facto merger, nor does it involve the mere transfer or sale of one corporation's assets to another corporation without extinction of the transferor company; and it is not a case where the transferee corporation had no independent character but was merely a reincarnation of the transferor. There is no suggestion in the record that the purpose of the merger was to defraud creditors. (See generally, *Schwartz* v. *McGraw-Edison Co.* (1971) 14 Cal.App.3d 767, 780-781 [92 Cal.Rptr. 776]; *Pierce* v. *Riverside Mtg. Securities Co.* (1938) 25 Cal.App.2d 248, 254-258 [77 P.2d 226]; Ballentine, Corporations (1946 ed.) § 280, pp. 664-666, and § 289, pp. 681-682; 2 Ballentine & Sterling, Cal. Corporation Laws (4th ed. 1974) § 312, pp. 552-557, and §§ 318-319, pp. 565-567; 15 Fletcher, Cyc. Corp. (Perm. ed. 1973 rev.) §§ 7043-7045.1, pp.

17-29, § 7102, pp. 147-148, and § 7129, p. 212; 19 Am.Jur.2d, Corporations, §§ 1491-1493, pp. 873-876, and § 1550, pp. 926-927.)

■ "In a statutory merger, the acquiring corporation assumes all liabilities, known and unknown, of its partner." (Kintner, Primer on the Law of Mergers (1973) p. 36.)[4] The assumption of unknown liabilities, including those which justify contract reformation after the merger, falls logically within the scope of Corporations Code section 4116. The section provides in broad terms and without exception that, upon merger, the surviving corporation "shall be subject to *all* the debts and liabilities of each [constituent corporation], *in the same manner as if the . . . surviving corporation had itself incurred them*," and that "[*a*]*ll* rights of creditors . . . of each of the constituent corporations shall be preserved unimpaired . . . ." (Italics added.) (See *Moe* v. *Transamerica Title Ins. Co.* (1971) 21 Cal. App.3d 289, 303-305 [98 Cal.Rptr. 547] (surviving corporation liable in punitive damages for tort of extinct corporation).)

" 'The general rule is that a court is not authorized in the construction of a statute, to create exceptions not specifically made. If the statute announces a general rule and makes no exception thereto, the courts can make none.' [Citations.]" (*Ogle* v. *Heim* (1968) 69 Cal.2d 7, 9 [69 Cal. Rptr. 579, 442 P.2d 659].) "Courts may not read into a statute an exception not incorporated therein by the Legislature [citation], unless such an exception must reasonably and necessarily be implied in order not to 'disregard or overturn a sound rule of public policy.' [Citation.]" (*Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 235 [104 Cal.Rptr. 558].)

■ Quite apart from the written lease, the actual common understanding of its original signatories created "debts and liabilities" of Cal-Camellia to plaintiff which existed prior to the merger and to which Gilmedco (now Del-Camellia) was "subject" under section 4116; and plain-

---

[4]"Caution dictates that provision be made at the time of the merger to protect the acquiring corporation. Protection can come in one of several ways. Warranties can be obtained from the acquired corporation or its principal shareholders guaranteeing the nature and amount of liability. Warranties from the corporation, however, will not survive the closing in a statutory merger. . . . Although the warranties of principal shareholders would offer greater protection to the acquiring corporation, those shareholders may be extremely reluctant to face unlimited liability and possible participation in protracted litigation. [¶]To avoid these problems, it has become common practice for acquiring corporations to withhold or deposit in escrow part of the purchase price for a specified period of time to be used to satisfy unknown or contingent liabilities. This procedure can be simplified further if the purchase price is to be paid in installments. Thus, the uncertainty inherent in any purchase of a going concern can be reduced." (Kintner, *op. cit. supra*, pp. 37-38.)

tiff had a preexisting right to reformation which section 4116 "preserved unimpaired" after the merger. In relying upon that portion of Civil Code section 3399 which prohibits reformation where "rights acquired by third persons, in good faith and for value" will be prejudiced, the court applied a general statute, whereas section 4116 is a special statute applicable to mergers. It is an established principle of statutory construction that "a special statute dealing expressly with a particular subject controls and takes priority over a general statute." (*Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 732 [108 P.2d 443]; see also *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)

Even more fundamentally, where the surviving corporation has succeeded to a contract through merger, and where reformation of that contract is later sought as against the surviving corporation, the surviving corporation is not a "third person" within the qualifying language of section 3399. In applying section 3399 in the instant case, the trial court erroneously ascribed to the surviving corporation the surviving corporation's *pre*-merger character as a "third person"—a character it no longer had at the time the issue arose as to whether it would be prejudiced by reformation of the lease. In legal effect, the surviving corporation (Gilmedco, now Del-Camellia) is, among other things, the constituent corporation (Cal-Camellia) which lost its separate identity upon merger. (*Jackson* v. *Continental Telephone Co.* (1963) 212 Cal.App.2d 510, 513-514 [28 Cal.Rptr. 1].)[5]

The surviving corporation must therefore be deemed to have the extinct corporation's understanding of the latter's contractual rights and duties. The surviving corporation is charged with at least constructive notice of the claims of creditors of the extinct corporation even though the surviving corporation lacks actual notice of such claims. To that extent, the surviving corporation is not a taker "in good faith" (Civ. Code, § 3399). A contrary rule would work a constructive fraud upon those creditors. (See *Morrison* v. *Snuff Co.* (1901) 79 Miss. 330 [30 So. 723] (rule applied

---

[5]In *Jackson* v. *Continental Telephone Co., supra,* 212 Cal.App.2d at pages 513-514, the court quoted *Mutual B. & L. Assn.* v. *Wiborg* (1943) 59 Cal.App.2d 325, at page 329 [139 P.2d 73], as expressing what happens upon the merger of corporations: " 'Although the distinct corporate entity of Title Guarantee passed out of existence or became extinct upon the completion of the act of consolidation, its corporate activities did not cease but were continued and carried on through the new channel. [Citation.] While the Title Guarantee merger with Title Insurance caused it to lose its identity as to its separate existence, yet it became an integral part of Title Insurance, and carried with it all of its rights, powers, liabilities, and assets "except the indicia and attributes of a corporate body distinct from that into which it is merged." [Citation.] The consolidation did not create an entirely new entity but "merely directs the blood of the old corporation into the veins of the new, the old living in the new." [Citation.]' "

to consolidated company).) "The protected 'third persons' referred to in section 3399 are not those who purchase with notice, actual or constructive, of the rights of other persons whose interests have been described defectively in written instruments . . . ." (*Shupe* v. *Nelson, supra,* 254 Cal.App.2d at p. 698.)

Moreover, *as concerns the rights of creditors of the extinct corporation,* when shares of stock in the surviving corporation and its parent company are issued to the shareholders of the extinct corporation as the only consideration for the acquisition of the latter's assets by the corporation which survives the merger, such acquisition cannot be viewed as having been made "for value" (Civ. Code, § 3399) notwithstanding that the consideration for it may have been lawful (Corp. Code, § 4103). Here again, the rule is salutary and is designed to prevent a constructive fraud upon the creditors of the corporation which has lost its separate identity. It would be inequitable to require the creditors of the extinct corporation— who, before the merger, could have looked to the assets of that corporation—to resort instead to shares of stock of speculative value, or to compel those creditors to follow those shares into the hands of the several stockholders. (See *Gibson* v. *American R. Exp. Co.* (1923) 195 Iowa 1126, 1131-1132 [193 N.W. 274, 277]; *American Ry. Express Co.* v. *Commonwealth* (1920) 190 Ky. 636, 648, 653 [228 S.W. 433, 438-441, 30 A.L.R. 543]; 15 Fletcher, Cyc. Corp. (Perm. ed. 1973 rev.) § 7127, pp. 204-206; 19 Am.Jur.2d, Corporations, §§ 1552-1553, pp. 928-929; cf. *Bing Crosby Minute Maid Corp.* v. *Eaton* (1956) 46 Cal.2d 484, 487 [297 P.2d 5]; *Healy* v. *Young* (1962) 198 Cal.App.2d 834, 835-836 [18 Cal.Rptr. 359].)

"The creditors of a corporation cannot prevent its consolidation or merger with another corporation even if the new debtor corporation is not as satisfactory to them as the old. In general the only remedy of the creditors of the constituent corporations, unless their existence is continued, is either against the united corporation, or to pursue the assets of the [nonsurviving] constituents into its hands on the ground of fraudulent conveyance. In merger or consolidation proceedings nothing passes by way of consideration to the [nonsurviving] constituent corporations, which are stripped of their assets. Unless their obligations followed their assets to the new or surviving corporation, as far as creditors are concerned the transfer of their assets would constitute a gift and perpetrate a fraud upon their creditors. The liability of the united corporation does not depend upon whether such corporation has received assets sufficient to cover such debts and liabilities from the [nonsurviving] constituent, although the contrary has sometimes been asserted. A personal liability is imposed by statute for contract and tort claims and is also usually expressly assumed in the agree-

ment of union." (Ballentine, Corporations (1946 ed.) § 294, pp. 690-691.) (Fns. omitted.)

The written agreement of merger between Gilmedco and Cal-Camellia provided that "all rights of creditors and all liens upon the property of the Constituent Corporations shall be preserved unimpaired and all debts, liabilities and duties of the Constituent Corporations shall thenceforth attach to the Surviving Corporation and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred and contracted by it."[6] Since this language was merely a reiteration of the provisions of Corporations Code section 4116 which are here relevant, we reach our decision herein upon the basis of the surviving corporation's liability under that section rather than upon the ground that Gilmedco, in a consensual sense, expressly or impliedly assumed liability. Our decision also rests upon the nonapplicability of the exception in Civil Code section 3399.

Defendants' reliance upon *Black* v. *Richfield Oil Corporation* (9th Cir. 1944) 146 F.2d 801, is unavailing. *Black* did not involve a merger. In *Black*, reorganization proceedings were had under section 77B of the Bankruptcy Act (11 U.S.C. former § 207, now § 501 et seq.), and a newly organized corporation simply purchased the assets of the debtor corporation from the reorganization trustee, in whom title to those assets had vested under the act (11 U.S.C. former § 207(c)(2), now § 586). The debtor corporation was not absorbed by the new corporation. Therefore, unlike the surviving corporation in the case at bench, the newly organized corporation in *Black* was a "third party" within the meaning of Civil Code section 3399 and was not chargeable with constructive notice; and the new corporation in *Black* acquired the assets of the debtor corporation "for value," having raised $20,000,000 to purchase the assets and to assume confirmed liabilities. (See *Black* opinion below, (S.D.Cal. 1941) 41 F.Supp. 988, 995.) Moreover, in contrast to Corporations Code section 4116, section 77B of the Bankruptcy Act provided that the assets when transferred to the new corporation were to be free and clear of all creditors' claims except such claims as might consistently be reserved in the order of confirmation entered by the court in the reorganization proceedings. The right to reform the contract sued upon in *Black* had been neither claimed in the

---

[6]Similar language appeared in a written "Plan of Reorganization and Agreement of Merger" concurrently executed by Gilmedco, Cal-Camellia, and Gilbert Shoe Stores, Inc. The latter document also contained Cal-Camellia's warranty of the accuracy of an attached schedule of contracts to which Cal-Camellia was a party. (See fn. 4, *supra*.) The attached schedule showed that the maximum annual rental which might be payable to plaintiff under the lease was 11 percent of $875,000. (See fn. 3, *supra*.)

section 77B proceedings nor reserved in the confirmation order issued by the bankruptcy court. (146 F.2d at p. 805.)[7]

■ Contrary to defendants' contention, such right as plaintiff may have to reformation is not affected by the fact that the failure of the lease to express the understanding of the original parties resulted from careless drafting by plaintiff's own agent. "[I]t makes no difference who wrote the instruments to be reformed so long as all parties were in common mistake as to what was contained therein." (*Renshaw* v. *Happy Valley Water Co., supra,* 114 Cal.App.2d at pp. 524-525.) "Mistake by a scrivener or draftsman in reducing the intent of the parties to writing is ground for reformation . . . ." (*Shupe* v. *Nelson, supra,* 254 Cal.App.2d at pp. 700-701.) In this connection, defendants cite *Fraters G. & P. Co.* v. *Southwestern C. Co.* (1930) 107 Cal.App. 1 [290 P. 45], and *Knerr* v. *Baruch Corporation* (1941) 47 Cal.App.2d 601 [118 P.2d 488]; but neither of those cases involved a mistake which was mutual.

In view of our foregoing conclusions, it is unnecessary for us to rule upon plaintiff's contention that the evidence did not support the court's finding that Gilmedco (now Del-Camellia) lacked *actual* notice of the understanding which the original parties to the lease had in respect to the rental formula.

The judgment is reversed.

Friedman, Acting P. J., and Paras, J., concurred.

A petition for a rehearing was denied on December 9, 1974, and the following opinion was then rendered:

**THE COURT.**—Defendants' petition for rehearing points out that our opinion omits mention of the trial court's finding that, shortly before the merger of Cal-Camellia into Gilmedco, "[p]laintiff, in writing, consented to the assignment and to the transfer by operation of law of the Woodland lease to Gilmedco, and represented that the lease had not been modified since its execution on August 1, 1968."

The omission was no oversight. The finding in question is not material to any issue on this appeal. It was not a finding that plaintiff represented that the written lease, when executed (signed), conformed with the actual agreement of its signatories.

Respondents' petition for a hearing by the Supreme Court was denied January 29, 1975. Richardson, J., did not participate therein.

---

[7]The opinion of the trial court in *Black* states: "There is no contention that [the newly organized corporation] is a continuation and reorganization of [the debtor corporation]. Both parties recognize that the new company is a separate entity and the rights of the parties are definitely fixed by the agreement and plan of reorganization whereby [the new company] became a purchaser, through the court, of the assets of the old company." (41 F.Supp. at p. 992.)